## MARGARET HEARTT, Respondent, *v.* ADOLPH KRUGER, Appellant.

B. being the owner of two adjoining lots in the city of New York, erected a building on each, five stories high with a party-wall dividing them. B. conveyed the lots to F. taking back a mortgage on one of them which described the line dividing them, as running through the centre of the party-wall. Subsequently both buildings were burned, only the foundation-wall, upon which the party-wall had been erected, remaining. While the premises were in this condition the lot mortgaged was sold on foreclosure and through various mesne conveyances defendant acquired title to it. He erected on the old foundation-wall a wall two stories high of the same thickness as the former one, and so partly on the adjoining lot. In an action of ejectment by the owner of the other lot, *held,* that after the destruction of the buildings by fire no right remained in defendant as appurtenant to his lot under which he could claim the continuance of an easement in plaintiff's lot for the support of another party-wall; that while the language of the description in the mortgage was sufficient to create a servitude in the adjoining lot for the purposes of the existing party-wall, it was not sufficient to predicate thereon any grant of a perpetual easement; that when the title to the two lots was severed, the purchaser of each presumably took title with reference to the existing condition, and the party-wall could not be changed so long as it stood and answered its purpose; but that the mutual easements related to that wall only and upon the destruction of the buildings they ceased, and the tenements reverted to their original condition of ownership.

*Brondage* v. *Warner* (2 Hill, 145), distinguished.

Reported below, 24 J. & S. 382.

(Argued April 25, 1890; decided June 3, 1890.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made December 6, 1888, which rendered a judgment in favor of plaintiff upon a verdict subject to the opinion of court.

The material facts are stated in the opinion.

*John Hardy* for appellant. The party-wall did not cease to be a party-wall after the fire. (*Brondage* v. *Warner*, 2 Hill, 145 ; *Campbell* v. *Mesier*, 4 Johns. Ch. 334 ; *Partridge* v. *Gilbert*, 15 N. Y. 608.) The defendant had a right to assume that the party-wall remained standing after the fire by the consent of the parties. (*Sherred* v. *Cisco*, 4 Sandf. 489 ; *Brooks* v. *Curtis*, 50 N. Y. 639.) The plaintiff is estopped from claiming that the foundation-wall was wrongfully carried up. (*Hogan* v. *City of Rochester*, 52 N. Y. 282, 286 ; *Brooks* v. *Curtis*, 50 id. 645 ; *Keating* v. *Korthage*, 4 West, 309 ; *Wendall* v. *Van Rensselaer*, 1 Johns. Ch. 344 ; *T. B. Co.* v. *Duncan*, 86 N. Y. 228.) The plaintiff is entitled to no relief so far as the rebuilding of the party-wall is concerned. (*Hendricks* v. *Stark*, 37 N. Y. 106 ; *Brooks* v. *Curtis*, 50 id. 644.)

*James J. Thomson* for respondent. On the severance of the tenements the wall separating and supporting the houses 503 and 505 West Fifty-fourth street, and which afterward became vested in appellant and respondent respectively, became a party-wall, and the reciprocal easement and servitude in the said lots attached on such severance. (*Lampmann* v. *Milks*, 21 N. Y. 505 ; *Rogers* v. *Sinsheimer*, 50 id. 648.) The easement and servitude of party-wall were continuous and apparent and the defendant, whether a prior or subsequent or contemporaneous purchaser, had actual notice. (*Rogers* v. *Sinsheimer*, 50 N. Y. 648.) No agreement can be implied from the erection of the party-wall to re-erect the wall after it shall have served its use as a party-wall, or to grant the perpetual easement to and impose the perpetual servitude of a party-wall on the lots of the parties on which it

shall be erected. (*N. Y. L. I. Co.* v. *Miller*, 1 Barb. Ch. 362; *Sherred* v. *Cisco*, 4 Sandf. 489; *Antomarche* v. *Russell*, 63 Ala. 358.) There is no obligation on the owner of either tenements in question in this action to re-erect the party-wall after destruction of both the buildings. (2 R. S. chap. 1, § 140; 3 id. [7th ed.] 2195, § 140; *Babcock* v. *Utter*, 1 Abb. Ct. App. Dec. 59, 60; *Wiseman* v. *Lucksinger*, 84 N. Y. 37, 38; *Taylor* v. *Millan*, 41 Alb. L. J. 233.)

GRAY, J. The plaintiff and defendant are owners of adjoining lots of land, in the city of New York, and their litigation, in the shape of an action of ejectment, is over the question of whether or not their tenements are subject to a perpetual party-wall easement, dominant as to the defendant's and servient as to the plaintiff's properties.

This question, as it is presented by the case before us, does not seem to have arisen before in our courts; though there are several reported cases which, I think, suggest the principle of decision. Some are referred to in the well-considered opinion of Judge INGRAHAM, speaking for the General Term below.

I think, indeed, we might leave the decision of this case with his opinion, were it not for the importance which, perhaps, the question involved possesses for real estate owners in cities. That consideration fairly warrants some expression of the views which lead us to uphold the judgments of the courts below.

In 1874 these lots were owned by one Burchell. He erected upon them two buildings, five stories in height, with a party-wall dividing them of twelve inches in width. He conveyed both premises to one Falk, and took back from his grantee a mortgage on the lot now owned by this defendant; which described the westerly line of the lot as "running southerly and parallel with Tenth avenue and partly through the centre of a party-wall fifty feet and five inches to the northerly side of Fifty-fourth street." With this conveyance of both lots and the contemporaneous mortgaging of one of them, com-

menced the severance of the tenements, and whatever rights
or easements have existed, with respect to the division wall
which partly supported both houses, they took their rise and
form in those transactions.

Through the conveyance upon a foreclosure sale of the mort-
gaged premises and other mesne conveyances, the defendant
acquired his title. In 1887, the buildings on both lots were
wholly burned down, and only the foundation or cellar-wall
remained, upon which had been erected the party-wall, and it
was while the premises were in that condition that this defend-
ant became their owner. He then built upon them, erecting
upon the old foundation-wall a party-wall two stories high and
of the same thickness as the former one. This erection of the
new wall partly upon the adjoining lot was without any other
right in the defendant than was to be found in the conditions
of his title. There is some pretence of an estoppel upon the
plaintiff, by reason of interviews with her husband upon the
subject of rebuilding; but there is no foundation for that
defence, or for the defence of acquiescence, and we need not
stop to consider that feature. The question thus arises as to
whether, after the destruction of the buildings by fire, any
right remained in the defendant, as appurtenant to his prop-
erty, under which he could claim the continuance of an
easement in the plaintiff's property for the support of another
party-wall. Where will we find the legal foundation for such
a claim? There had certainly been no agreement, and there
was no express grant of any easement in the land by the com-
mon owner, Falk, and I do not see how any grant arose by
implication, from his mortgaging the lot now owned by the
defendant. The only language in the mortgage capable of
such an implication was in the description of the westerly
boundary, which I have quoted above. That, however, was
merely language of description, and, while sufficient to create
a servitude in the adjoining lot for the purpose of the existing
party-wall, was insufficient to predicate any grant of a per-
petual easement upon. It was merely the statement of the
fact that the dividing line of the two lots ran through the cen-

tre of what was a party-wall. So that the claim of the defend-
ant to a continued easement in the plaintiff's land must depend
wholly upon this reasoning, namely: That a party-wall had
formerly existed there and that because the foundation-wall
remained, that fact sufficed to preserve unimpaired the right to
a reconstruction of the party-wall. The defendant insists that
the wall did not cease to be a party-wall after the fire, and he
cites in support of his position *Brondage* v. *Warner* (2 Hill,
145). His argument amounts to this, in effect, that if any
fragment of the wall was left, or if only the foundation or
cellar wall, upon which it stood, remained, in the legal vision
the party-wall still stood, with its accompanying burden, or
benefit, to the adjoining properties. But that I consider a doc-
trine untenable and clashing with the doctrine of property
rights in land. *Brondage* v. *Warner* (*supra*) affords no sup-
port for it, for there the defendant's right to use and occupy
the wall in question lay in grant. The deed, under which the
defendant in ejectment claimed the right to continue to use
the wall, granted the right to build upon and occupy it. That
had been done. The fire, which had destroyed the plaintiff's
store, left the wall standing, which was occupied by the
defendant. It still answered the purpose for which its use
had been deeded, and, therefore, the court held that the right
to continue to use it had not been affected. The facts of this
case are quite different. When the title to these two lots was
severed by their conveyance to separate persons, the purchaser
of each lot is presumed to have contracted in reference to
the condition of the property at the time, and the openly
existing arrangement of a party-wall could not be changed,
so long as it stood and answered its purpose. It was made a
party-wall upon the severance of the title by the description
of the boundary line; but the whole extent of the qualifica-
tion, which resulted as to each lot owner's title, was the ease-
ment which the other acquired in the wall dividing and
supporting their respective buildings. Each was bound to
preserve the existing order of things in that respect, and
neither had any right to change the relative condition of his

building to the injury of the adjoining one. The party-wall of the two buildings was an open and visible condition of the ownership of the property, and, in legal contemplation, its use as such, while the buildings stood, was an element which entered into the contract of the purchaser, and which charged the land with a servitude. This principle of obligation is asserted in several cases, of which I only cite *Lampman* v. *Milks* (21 N. Y. 507); *Curtiss* v. *Ayrault* (47 id. 79), and *Rogers* v. *Sinsheimer* (50 id. 646). But, upon the destruction of the buildings, the tenements reverted to their original or primary conditions of ownership. Their tenure was no longer qualified by the relative rights and obligations which previously existed. In the early case of *Sherred* v. *Cisco* (4 Sandf. 485) the facts were quite similar to those in this record. Adjoining buildings were destroyed by fire, and nothing was left of a party-wall but the stone foundation. The plaintiff rebuilt on his lot, and, when the defendant also rebuilt, he made use of the wall for his buildings which plaintiff had erected on the old foundation. Thereupon plaintiff sued to recover of defendant his contribution towards the expense of the erection, and failed in his suit. In his opinion, Judge Sanford held that the agreement under which the party-wall had been built related to that wall only, and he said "that when the owners of adjoining city lots unite in building two stores with a party-wall we have no right to infer from that act an agreement binding upon them and their heirs and assigns to the end of time to erect another like party-wall at their mutual expense when that one is casually destroyed, and so on as often as the new one shares the same fate." The principle of that decision, I think, was a correct one, and it may be well applied here. The implied agreement that the party-wall, existing at the time of the conveyances of the two lots by their common owner, should continue in its use and occupancy as such, cannot be extended so as to relate to a changed condition of things, caused by the casual destruction of the wall and buildings. In *Partridge* v. *Gilbert* (15 N. Y. 601) Judge Denio, in his opinion upon the case, approves of Judge Sanford's

opinion in the case cited. He held that upon the occurrence of a state of affairs rendering the party-wall useless in its then condition, "the mutual easements have become inapplicable and that each proprietor may build as he pleases upon his own land, without any obligation to accommodate the other." The facts of that case were not, of course, similar, for the action related to the right of the tenant of a building to recover damages for injuries to goods, etc., occasioned during the rebuilding by the defendants of a division-wall. The case turned upon the necessity for the removal of the old and the rebuilding of a new wall. But the opinions are instructive upon the subject before us, however unnecessary, in that respect, to the decision of that particular case. Very appropriately to this case, Judge DENIO remarked, also, in his opinion, that "in the changing condition of our cities and villages, it must often happen, as it did actually happen in this case, that edifices of different dimensions and of an entirely different character would be required. And it might happen, too, that the views of one of the proprietors, as to the value and extent of the new buildings, would essentially differ from the other, and the division-wall which would suit one of them would be inapplicable to the objects of the other."

The rule which, with the cessation of the necessity for the existence of a right, abrogates the right itself, is supported by the reason of the thing, as well as by legal principles. The mutual easements existed by force of the situation at the time of the severance of the ownership of the two lots, and, with the change in that situation produced by the casual destruction of the buildings, the reason for their existence ceased. Thenceforth, they were inapplicable and the lands were free for the lawful uses of their owners. The easement was measured, in its extent and duration, by the existence of the necessity for it. When the necessity ceased, as it did by the destruction of the buildings and wall, the rights resulting from it ceased also. (*Ogden* v. *Jennings*, 62 N. Y. 531.)

In *Holmes* v. *Goring* (2 Bing. 76) that principle was laid down in the case of a right of way.

Without further discussion of principle or authorities, I think the judgment appealed from was clearly right and, therefore, should be affirmed, with costs.

All concur, except RUGER, Ch. J., and O'BRIEN, J., not voting.

Judgment affirmed.