(87 App. Div. 352.)

DEEVES et al. v. CONSTABLE et al.

(Supreme Court, Appellate Division, First Department. November 13, 1903.)

1. COVENANTS IN DEED—PROTECTION OF GRANTOR'S RESIDENCE—CHANGE OF CIRCUMSTANCES.

In 1853 a grantor deeded property adjoining his residence, the grantee entering into various covenants for the protection of the grantor's residence—among others, one that the house he would erect should not project beyond the line of the grantor's dwelling, for a distance of at least 20

feet away therefrom. The neighborhood was at that time a residential one. Afterwards it became devoted to business, and the grantor's dwelling was torn down and the property otnerwise occupied. *Held* that, the occasion for the covenant having ceased, the covenant terminated.

**2. SAME.**

The grantor's successors in title erected, in place of the residence, a business building on the street line. *Held*, that this amounted to a surrender of any easement theretofore existing in their favor by virtue of the covenant.

**3. SAME—COVENANT FOR LIGHT AND AIR.**

At the time of the deed the grantor's residence had no windows on the east, or, if so, he acquiesced in their obstruction by the adjoining building; nor did the deed reserve any easement of light and air. *Held,* that the restrictive covenant would not be continued, under the changed conditions, as a covenant for light and air.

Submission of controversy by Richard Deeves and others against Frederick A. Constable and another, as trustees, on an agreed statement of facts. Judgment for plaintiffs.

The plaintiffs are the owners in fee of the premises known as the "Everett House," located on the northwest corner of Seventeenth street and Fourth avenue, in the city of New York, which includes the small plot shown on the diagram, and hereafter called "Plot X." Plaintiffs have been in possession of said real property since 1895. The plaintiffs allege that the defendants unjustly claim an estate or interest or easement in plot X, which plot is 20 feet long, facing on Seventeenth street, and 10 feet deep, as shown on the following plot:

The defendants claim that they have an easement in said plot by reason of certain conditions or covenants set forth in the deed thereof from William S. Moffat to Anson G. Phelps, dated September 1, 1853; the said deed conveying to the predecessor in title to the plaintiffs. The said conditions or covenants are as follows:

"First. That the said party of the second part his heirs or assigns shall not erect or suffer to be erected on the said premises or any part thereof any nuisance or any establishment where any business or manufacture usually denominated a nuisance may be carried on or conducted. Secondly, that the said party of the second part his heirs or assigns shall not erect or cause or suffer to be erected on the said premises or any part thereof any

stable at a distance less than twenty-five feet from the dwelling house of the said party of the first part adjoining the said premises and on the west side thereof or at distance less than twenty-five feet from any part of said dwelling house. Thirdly, that the said party of the second part his heirs or assigns shall not erect upon the said premises any other than a first-class dwelling house—that the front of such house or any part thereof, straight, semicircular, oval or otherwise, shall not project or begin to project beyond the line or front of said dwelling house of the said party of the first part before mentioned, at a distance less than ten feet easterly or southeasterly from the easterly or southeasterly line of said dwelling house of the said party of the first part and that such projection shall not extend more than 18 (eighteen) inches beyond the front of the dwelling house of the said party of the first part within twenty feet of said house of said party of the first part. And lastly that the said party of the second part his heirs and assigns shall not dig the foundation of any dwelling house erected or to be erected by him, them or any of them on the said premises deeper than the foundation of the said dwelling house of the said party of the first part."

The plaintiffs claim that the said covenants are null and void and of no effect. The defendants claim that the said covenants, reserving to William B. Moffat, their grantor, the easements therein specified, were and still are operative to confer upon them the easements reserved in or over the said plot X. The plaintiffs claim a right to build upon the said plot X the above-described portion of their premises, notwithstanding said covenants, and the defendants dispute said claim by reason of the said covenants. Richard Arnold died seised in fee of the premises known as the "Century Building Property," next west to plaintiffs' property, the Everett House, and the defendants are trustees under his will, vested with title to said Century Building property. Both parties derive title from William B. Moffat. In 1853 the property now covered by the Everett House was vacant, and at that time there was upon the property of the defendants a private dwelling, owned and occupied by said William B. Moffat, the front of which dwelling, exclusive of areaways, was 9¾ feet north of the building line of the north side of Seventeenth street. This is the dwelling house referred to in the deed from Moffat to Phelps, above mentioned. At the time of making this deed, the premises of both parties were in a residential neighborhood, which has now entirely changed, and has become devoted exclusively to trade and business. In 1856 the Everett House was built as it now stands, has always been used for hotel purposes, and it was the first building erected upon that site. The front of the Everett House extends to the northern boundary of Seventeenth street, except at plot X. In 1853 all the dwelling houses west of Moffat's home on Broadway stood on the same line as Moffat's house, but at the present time business buildings have replaced them, and they are built up to the line of the street. In 1879 the defendants' testator took down the Moffat dwelling and erected the Century Building, which comes full up to the north line of the street, and stands out even with the southern line of plot X. When the Century Building was erected, a vertical row of windows was placed in each story, except on the ground floor, directly over plot X, and these windows have since remained there without objection on the part of the plaintiffs. The plaintiffs demand judgment that the defendants, or any persons deriving title in any way from them, be forever barred from having any claim, lien, right, or easement upon or over the said plot X, while the defendants demand judgment that their easement over said plot be forever established.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Nathan Ottinger, for plaintiffs.
Thomas W. Butts, for defendants.

HATCH, J. Restrictive covenants of the character now under consideration are to be construed most strongly against the covenant; such construction to be in accordance with the intent of the parties

as expressed therein, coupled with the surrounding circumstances, as nearly as the same can be ascertained. Clark v. Jammes, 87 Hun, 215, 33 N. Y. Supp. 1020; White v. Collins Bldg. Const. Co., 82 App. Div. 1, 81 N. Y. Supp. 434; Sonn v. Heilberg, 38 App. Div. 515, 56 N. Y. Supp. 341. We must have clearly in mind, in construing the covenant now under consideration, the purpose and use to which the land and building was devoted, and the circumstances surrounding such use at the time when the covenant was made, as well as to consider the terms of the covenant itself. The covenant was imposed upon the land in 1853. At that time all of the property on the northerly side of Seventeenth street, and fronting thereon between Broadway and Fourth avenue, was used for residential purposes, so far as buildings had been constructed upon the land. A considerable portion of it at that time was vacant property. The contemplated use of the land was evidently for residential purposes, business not having yet invaded that part of the city. Having the purpose of use in mind, the covenant provides, first, that no nuisance should be erected, or manufactory or business established, commonly considered a nuisance; second, that no stable should be erected at a distance less than 25 feet from the dwelling house to which the covenant applied; third (which is here the important provision), not to erect upon the premises "any other than a first-class dwelling house—that the front of such house or any part thereof, straight, semicircular, oval or otherwise, shall not project or begin to project beyond the line or front of said dwelling house of the said party of the first part before mentioned, at a distance less than ten feet easterly or southeasterly from the easterly or southeasterly line of said dwelling house of the party of the first part and that such projection shall not extend more than 18 (eighteen) inches beyond the front of the dwelling house of the said party of the first part within twenty feet of said house of said party of the first part"; and, lastly, that the depth of any excavation which might be made should not be below the wall of the house of the party of the first part. Each and every of these covenants has relation to the protection of the dwelling house occupied by the grantor in the deed. The language used is not apt for any other purpose; for that purpose the words of the covenant are precise and appropriate; so that, taking into consideration the fact that this was a residential neighborhood, that the grantor had erected a dwelling house upon the premises, and that he desired to protect the use thereof from all obnoxious surroundings, and made precise stipulations to that end in the covenant itself, it follows as an irresistible conclusion that the purpose and object which the grantor had in mind was to protect himself in the enjoyment of his property for purposes of a residence, free of any disagreeable environment. It is evident, therefore, that when the conditions were radically and entirely changed, and the property ceased to be used for residential purposes, and the whole street was devoted exclusively to business use, the reason for the existence of the covenant failed, as no residence remained to be protected; and to continue to restrict the use of the land confers no benefit upon the grantor or his successors in the covenant. As no benefit is to be derived to the dwelling house, to which the cove-

nants apply, equity forbids that the restriction should still be enforced, when its only effect is to operate disadvantageously to the present owners of the land, to whom the covenants apply. The doctrine announced in Trustees of Columbia College v. Thacher, 87 N. Y. 311, 41 Am. Rep. 365, finds precise application to such case. In Holt v. Fleischman, 75 App. Div. 593, 78 N. Y. Supp. 647, this court sustained a covenant which was for the benefit of a dwelling house, as such, and noted the distinction between that case and the doctrine announced in Trustees of Columbia College v. Thacher, supra. Therein, however, the dwelling was still occupied for purposes of a residence, and the enforcement of the covenant was essential to a complete enjoyment of it as such. Here, however, by reason of changed conditions, no benefit can arise in the enjoyment of this property by the enforcement of the covenant. The same doctrine is announced in Lattimer v. Livermore, 72 N. Y. 174. If there were no other reasons therefor, we should regard the radical change and the cesser of use of the property for residential purposes as furnishing a sufficient ground to deny an enforcement of the covenant. In addition to this, we are also of opinion that when the successors of the grantor in the deed tore down the dwelling, and erected a business block thereon, which extended over the open space in front of the dwelling house to the building line upon the northerly side of Seventeenth street, it amounted to an extinguishment of whatever easement had theretofore existed upon the adjoining property. Such act was inconsistent with the terms of the restrictive covenant, its language, and intention. It was a recognition of changed conditions which had converted this street from a residential street, and devoted it to business use. The building which was erected upon this site was itself devoted to business, and was a conclusive act, and conclusively evidenced an intention upon the part of the successors in the grant to disregard and nullify the covenants which had been imposed for the enjoyment of the property as a dwelling. The authorities which hold that such acts are inconsistent with the continued existence of the covenant are numerous. Snell v. Levitt, 110 N. Y. 595, 18 N. E. 370, 1 L. R. A. 414; Heartt v. Kruger, 121 N. Y. 386, 24 N. E. 841, 9 L. R. A. 135, 18 Am. St. Rep. 829; Dyer v. Sandford, 9 Metc. (Mass.) 395, 43 Am. Dec. 399; Canny v. Andrews, 123 Mass. 155.

Nor can the covenant be held to continue and remain operative as an easement for light and air over the restricted space. The Everett House was built in 1856. When it was constructed, no space was left between the Moffat dwelling and its westerly wall, nor were there any side lights in the Moffat dwelling, or, if so, their obstruction by the wall of the Everett House was complete, and was acquiesced in by the owner of the dwelling. The projection of the dwelling house beyond the front of the Everett House was not sufficient to permit of any windows on its easterly side, nor had it any upon the westerly side at that time. All of the light which this part of the dwelling received came from the front. The only possible benefit it could receive in the way of light and air was the opening in front over the uninclosed space. It is evident that it did not re-

quire the restricted space as essential for light or air upon the easterly side of the dwelling. The covenant in the deed contains no reservation of any easement of light and air, and the circumstances did not permit of any benefit to be derived therefrom to the dwelling so long as it continued to remain upon the site where it then stood, or to any part of it except the front. When the dwelling was torn down and the business block constructed, it occupied the vacant space in front of 9½ feet, and by constructing upon the building line it received for its front the same light which it had received when it stood farther back. Such removal carried with it no right to put windows in the side walls, and thereby acquire an easement of light and air over the restricted space for the benefit of its side. The restrictive covenant does not provide for it, and no conditions are shown to exist which require that it should be applied to it. Easements of light and air are protected only where they are reserved and remain beneficial to the property in whose favor they exist. Zipp v. Barker, 40 App. Div. 1, 57 N. Y. Supp. 569, affirmed on appeal in 166 N. Y. 621, 59 N. E. 1133.

For these reasons, we conclude that the restrictive covenants have ceased to apply to the plot in controversy, and for this reason judgment should pass for the plaintiffs upon the agreed case, with costs. All concur