(112 App. Div. 234)

### REMSEN v. WINGERT.

(Supreme Court, Appellate Division, First Department. April 6, 1906.)

SPECIFIC PERFORMANCE—CONTRACT TO BUY LAND.

     A vendor of land, agreeing to· convey it with general warranty free from all incumbrances, is not entitled to a specific performance of his contract where a deed under which he holds title reserves to an adjoining owner ˙the privilege of keeping the windows forever open that were in the house on the adjoining lot, though in the meantime a building had been erected on the adjoining lot without any windows facing the lot in question.

     [Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Specific Performance, §§ 257–263.]

Appeal from Special Term, New York County.

Action for specific performance of a contract for the purchase of real estate by Jane Remsen against Charles A. Wingert. From a judgment in favor of plaintiff, defendant appeals. Reversed.

Argued before O'BRIEN, P. J., and McLAUGHLIN, INGRAHAM, CLARKE, and HOUGHTON, JJ.

Theodore T. Baylor, for appellant.

John Ewen (William R. Wilder and Wilder & Allen, on the brief), for· respondent.

CLARKE, J. The plaintiff and the defendant entered into a written contract under seal wherein the plaintiff agreed to sell and the de-

fendant agreed to buy a certain described piece of land, with the buildings thereon, situated in the city of New York, and known as No. 2 Watts street. In and by said contract the plaintiff agreed to deliver on the closing day "a proper deed, containing a general warranty and the usual full covenants for the conveying and assuring to them the fee simple of the said premises free from all incumbrances." The defendant rejected the title and refused to perform, upon the ground that the title was not marketable.

It will be necessary to consider but one of the defects insisted upon. The learned trial court made this finding of fact:

"That the building erected on the premises in question, which is known as No. 2 Watts street, has been in existence in its present state for one hundred years. That for some time prior to May 2, 1835, the said premises and the adjoining premises, known as No. 4 Watts street, were owned in common by Abraham Remsen and James Ackerman. That on that day the said Ackerman deeded to the said Remsen his interest in the premises No. 2 Watts street, and the said Remsen deeded to the said Ackerman his interest in the premises No. 4 Watts street. That in the deed from the said Ackerman to Remsen there is reserved 'the privilege of keeping the windows forever open that are in the easterly side of said house No. 4 Watts street,' and in the deed from Remsen to Ackerman there is granted 'also the privilege of keeping the windows open forever that now are in the easterly side of said house No. 4 Watts street.' That the said provisions are the covenants alleged to create an easement in favor of the premises No. 4 Watts street, over the premises in question, and are the basis of one of the objections made by defendant to said title."

The court further found:

"That some time in the year 1895 the building on the premises No. 4 Watts street, which was a brick front, frame, two-story building, was torn down, and a six-story brick factory and business building was erected in its place. That the building destroyed had no windows on the side facing No. 2 Watts street. That the building erected in its place has on the side facing upon No. 2 Watts street, at least twelve windows."

In his opinion the learned court said:

"The fact that Ackerman reserved the 'privilege of keeping the windows forever open that are on the easterly side of said house No. 4 Watts street,' etc., does not give the owner of No. 4 Watts street an easement over the property which the plaintiff contracted to sell to the defendant, because the evidence shows that the building that was on the property at the time the Ackerman deed was made is not now on said property, and an easement does not survive the destruction of said building that was on the property at the time the easement was created. Heartt v. Kruger, 121 N. Y. 386, 24 N. E. 841, 9 L. R. A. 135, 18 Am. St. Rep. 829."

The question in Heartt v. Kruger was whether or not the tenements of adjacent owners were subject to a perpetual party wall easement, dominant as to the defendant's, and servient as to the plaintiff's, property. The original owner of the two lots had erected two buildings thereon, with a party wall dividing them. He conveyed both premises to one Falk, and took back from his grantee a mortgage on the lot owned by the defendant, which described the westerly line of the lot as "running through the center of a party wall." The buildings were subsequently burned down. The defendant then obtained title to one lot, and erected upon the old foundation wall a party wall of the same thickness as the former one. Judge Gray said:

"This erection of the new wall partly upon the adjoining lot was without any other right in the defendant than was to be found in the condition of his title. * * * Where will we find the legal foundation for such a claim? There had certainly been no agreement, and there was no express grant of any easement in the land by the common owner, and I do not see how any grant arose by implication from his mortgaging the lot now owned by the defendant. The only language in the mortgage capable of such an implication was in the description of the westerly boundary, which I have quoted above. That, however, was merely language of description, and, while sufficient to create a servitude in the adjoining lot for the purpose of the existing party wall, was insufficient to predicate any grant of a perpetual easement upon. * * * The implied agreement that the party wall existing at the time of the conveyance of the two lots by their common owner should continue in its use and occupancy as such cannot be extended so as to relate to a changed condition of things caused by the casual destruction of the wall and building."

The decision that an implied agreement growing out of a description which carries to the center of a party wall does not create a perpetual easement, which survives the destruction of the buildings, seems not to apply to an easement created by reservation "forever" in mutual deeds. Deeves v. Constable, 87 App. Div. 352, 84 N. Y. Supp. 592, is cited by respondent. But it can have no force in this controversy, for it is said in the opinion:

"The covenant in the deed contains no reservation of any easement of light and air. * * * Such removal [of the old building] carried with it no right to put windows in the side walls [none such having been in the old building], and thereby acquired an easement of light and air over the restricted space for the benefit of its side. The restrictive covenant does not provide for it, and no conditions are shown to exist which require that it should be applied to it. Easements of light and air are protected only when they are reserved and remain beneficial to the property in whose favor they exist."

There is no doubt that an easement of light and air, at least to the extent of the windows then existing, was reserved in the mutual conveyances, and that, if existing, said easement would be still beneficial to the property. When one acquires a title by deed, it will not be affected by nonuser unless there is a loss of title in some of the ways recognized by law. Mere nonuser, however long continued, does not create an abandonment. Conabeer v. N. Y. C. & H. R. R. Co., 156 N. Y., at page 484, 51 N. E. 402, and cases cited. In Welsh v. Taylor, 134 N. Y., at page 460, 31 N. E., at page 899, 18 L. R. A. 535, it was said:

"A person who acquires title by deed to an easement appurtenant to land has the same right of property therein as he has in the land, and it is no more necessary that he should make use of it to maintain his title than it is that he should actually occupy or cultivate the land. Hence his title is not affected by nonuser, and unless there is shown against him some adverse possession, or a loss of title in some of the ways recognized by law, he may rely on the existence of his property, with full assurance, when the occasion arises for its use and enjoyment, he will find his rights therein absolute and unimpaired."

Said Mr. Justice Laughlin in McCullough v. Broad Exchange Co., 101 App. Div. 566, 92 N. Y. Supp. 533:

"* * * This right of way and easement were acquired by deed, and the rule is that such an easement is not extinguished by a nonuser, but only by grant or adverse possession. * * * It was formerly held in England that the easement of 'ancient lights' might be lost or suspended until the premises

were restored to their original condition, by enlarging or changing the position of the windows, but it is doubtful whether that rule still prevails, * * * and, moreover, it was never given place in our jurisprudence."

An easement is an interest in land created by grant or agreement, express or implied, which confers a right upon the owner thereof to some profit, benefit, or dominion or lawful use out of or over the estate of another. "That the covenant against incumbrances is broken by an outstanding easement of any kind is perfectly well established by the authorities in this state." Huyck v. Andrews, 113 N. Y. 81, 20 N. E. 581, 3 L. R. A. 789, 10 Am. St. Rep. 432.

This is an action for specific performance. The owner of No. 4 Watts street, to which the easement is claimed to be 'appurtenant by reservation in the deed, is not a party, and no determination here had would bind or control her. The facts are doubtful or in dispute as to these matters; what windows existed at the time of the deed in 1835 on the easterly side of No. 4 Watts street; whether the house pulled down in 1897 was the same house which was standing in 1835; what windows, if any, were on the east side of that house so pulled down. Further, it distinctly appears in evidence that the building now No. 4 Watts street has a large number of windows upon the east side, and that the present owner thereof still claims the easement for light and air, and has notified the defendant in person that if he attempted to build on the line he would have a lawsuit on his hands. It therefore seems to me that this case comes within the rule as stated by Mr. Justice O'Brien in Salisbury v. Ryon, 105 App. Div. 445, 94 N. Y. Supp. 352, citing the many cases in the books upon this subject; that the court will not force a party to take title where doubtful questions of law and fact exist concerning it, and all the parties who have a right to be heard upon that question are not before the court.

The judgment should therefore be reversed, with costs to the appellant, and judgment should be directed to be entered in favor of the defendant, dismissing the plaintiff's complaint, and judgment directed in favor of the defendant against the plaintiff on the defendant's counterclaim for the sum of $500, paid on account of the purchase price, and $185 for expenses for examining the title, together with interest thereon and costs. All concur.