GULF OIL CORPORATION OF PENNSYLVANIA *v.*
SUBURBAN REALTY COMPANY.

No. 11529. FEBRUARY 12, 1937.

*Tye, Thomson & Tye,* for plaintiff in error.
*Hendrix & Buchanan,* contra.

BELL, Justice. The bill of exceptions in this case was brought by the defendant, assigning error on the grant of an interlocutory injunction. On June 1, 1936, the Suburban Realty Company filed a suit to enjoin the Gulf Oil Corporation of Pennsylvania from building a filling-station on a tract of land situated at the southwest corner of Stewart Avenue and Dill Avenue, consisting of lots numbered 1 and 2 of a subdivision made by the Suburban Realty Company in 1906. The defendant filed an answer, and from the pleadings and the evidence the following facts appeared at the interlocutory hearing. The defendant is the present owner of a portion of each of the two lots in question, holding under grantees of the plaintiff, by chains of title containing building restrictions, as follows: On August 6, 1912, the Suburban Realty Company executed, on a printed form prepared by it, a bond for title to one Yancey, agreeing to convey lot number 2 on payment of the purchase-price. This bond contained a typewritten description of the property, followed by a typewritten stipulation "that

this property is to be used for residential purposes only, and that the building line is 25 feet south of Dill Avenue." The printed form contained the following language: "Neither said property nor any part thereof shall be used for negro tenements, nor rented to negroes, nor sold or conveyed either directly or indirectly to any negro or person of African descent, within a period of twenty years from the date of this instrument." The bond was duly recorded on August 22, 1912. On February 12, 1920, the Suburban Realty Company executed a warranty deed to Yancey, conveying the same property and embodying the same printed restrictions as in the bond for title. In the deed, as in the bond for title, the restriction as to race was a part of the printed form. This part of the deed was followed in order by a typewritten description of the property and the restriction as to residential use. On January 23, 1913, the Suburban Realty Company executed a bond for title to one Chrisenberry, agreeing to convey lot number 1 on payment of the purchase-money. This bond was transferred to C. A. Nicholson on March 3, 1916, and was duly recorded in November, 1914. It contained the same restrictions as in the bond issued to Yancey. On January 5, 1920, the realty company executed to Nicholson a deed containing the same restrictions. This deed was duly recorded in December, 1920. Nicholson conveyed the property (lot number 1) to Joseph W. Humphries on June 25, 1927, by a deed which embodied by reference the same restrictions. This deed was duly recorded. These bonds for title and deeds constitute parts of the chains of title under which the defendant holds the property on which it purposes to erect a filling-station; and it is contended by the plaintiff that such use of the property would violate the restriction as to use for residential purposes only.

The subdivision developed by the Suburban Realty Company consisted originally of a tract of about 100 acres lying south of Dill Avenue and west of Stewart Avenue. The eastern half of this tract, on which lots 1 and 2 are situated, was subdivided and developed in 1906. It contained in all ten blocks divided into 263 lots. In 1913 the western half of the tract was so subdivided as to contain 271 lots, in ten blocks. The Suburban Realty Company graded at its own expense nine streets running north and south, and one street running east and west. It installed a sewerage system, and paved and curbed the streets throughout the

entire subdivision.  It has sold all of the lots except about thirty, and has repurchased one; so that it now owns about thirty-one lots of the original tract, the value of which, according to the evidence, is approximately $100,000.  All of these lots are in the western half of the subdivision, except the repurchased lot 18, which is in the same block with lots 1 and 2, and is situated about 300 feet therefrom.  It was sold originally by the realty company in 1910 under restriction, and was repurchased in 1918.  Every lot in the entire subdivision was sold under a restriction, for twenty years from date of sale, against residence by persons of African descent, and "many" of them (how many not appearing) were restricted to residential use only.  The block in which lots 1 and 2 are located contained twenty-eight lots in all.  Thirteen were sold before lots 1 and 2, six being restricted to residential use and seven without such restriction; and thirteen were sold after lots 1 and 2, nine with and four without the restriction.  It seems that in two sales, one made before and the other after the sale of lots 1 and 2, the restriction was limited to twenty years, which period as to one of the lots had expired before the present suit was instituted.  It appears that in one previous sale the bond for title carried the restriction limited to twenty years, but that the deed made in pursuance of such bond did not contain the time limit.  Lot number 3, adjacent to lot number 2 on the west, was one of those sold without restriction to residential use, after the sale of lots 1 and 2; and the owner has placed a residence and a store building thereon, the store having been built about four years ago.  Lot 8, next south of lots 1 and 2, was among those previously sold without such restriction.  The Suburban Realty Company owns additional real estate in the vicinity of lots 1 and 2, though not in the subdivision developed by it, consisting of four residences and one vacant lot, of the value of about $20,000.  The area embracing the four corners made by the intersection of Stewart Avenue and Dill Avenue, including lots 1, 2, and 3, was zoned for business by the City of Atlanta about December 21, 1928; but none of such area has yet been used for business purposes, except the northwest corner, on which is situated a two-story business building used for stores and a lodge room, and except lot number 3 on which a store is situated.  A church building is located on the northeast corner.

The plaintiff introduced an affidavit by its president, formerly

its secretary, from which a part of this statement is taken. Other portions of the affidavit were as follows: "This deponent further says that he has been a resident of Atlanta since 1868, and has been actively engaged in the real-estate business in the City of Atlanta since 1888, and that he is familiar with real-estate values and real-estate developments in the City of Atlanta, and feels that he is in every way qualified as an expert in this line of business. . . Deponent further says that the erection of a filling-station at the corner of Dill and Stewart Avenues on the property of the defendant will damage and injure the value of the properties of the Suburban Realty Company. Deponent further says that it is extremely difficult to estimate accurately or to a mathematical certainty the amount of such damage; that in his experience the erection of any kind of business in a strictly residential section causes the values of the remaining properties to deteriorate for residential purposes. Deponent further says that in his experience in the City of Atlanta, when property changes from residence property to business property, that the change usually takes place by one or more lots being developed for business. That thereafter one by one the remaining properties become useless and valueless for residence property; and unless they in turn can be developed into business properties, a material loss is effected the owners thereof. It is during this period of change, which is caused by the first person entering the section and developing a portion thereof into business property, that a loss occurs to those remaining. Deponent further says that there are filling-stations on unrestricted property in reasonable distance of this subdivision, and that there is no great inconvenience being caused the residents of this subdivision by lack of a filling-station at the southwest corner of Dill and Stewart Avenues."

The plaintiff in error contends that the order granting an injunction was erroneous, for the following reasons: (1) The limitation to residential use should be construed as existing for a period of only twenty years from the date of the first bond for title involved in this case, and therefore as having expired in 1932. (2) The plaintiff has lost its right to an equitable enforcement of the restrictive covenant, by violating the maxim that he who would have equity must do equity. (3) In selling adjacent and neighboring lots without restriction to residential use after the

sale of lots 1 and 2, the plaintiff parted with its right to enforce the restriction as to these two lots. (4) The plaintiff would sustain no damage from the erection of the filling-station. These contentions will be considered in the order stated. ,

■ The defendant holds the title to lots 1 and 2 as a remote grantee of the plaintiff; and it is bound by the restrictions placed upon these lots, so far as these restrictions are presently valid· and enforceable. It contends that the restrictions to residential use should not exist in perpetuity, but should be limited to a period of twenty years from the dates of the bonds for title issued respectively in 1912 and 1913, for the following reasons: It appears that the plaintiff had no general scheme of. restriction, except as to residence by persons of. African descent; and since the restriction as to race was expressly limited to a period. of twenty years, the same time limit should apply to the restriction to use for residential purposes. Decisions by courts of other States are cited to support the contention that where one of several restrictions is expressly limited and others are unlimited as to time, the deed or contract should be so construed as to make the express time limit apply to all restrictions contained therein. The following are some of the decisions which have been called to our attention in this connection: Armstrong v. Griffin, 83 N. J. Eq. 599 (91 Atl. 1016); Loomis v. Collins, 111 Ill. 999; Dick v. Goldberg, 295 Ill. 86 (128 N. E. 723); Hill v. Levine, 252 Mass. 513 (147 N. E. 837); Bresee v. Dunn, 178 Cal. 96 (172 Pac. 387). It is also pointed out that in the sale of some of the other lots the plaintiff ·expressly limited the restrictions as to residential use for the period of twenty years; and it is insisted alternatively that since no time limit was stated in either of the bonds for title, or in the deeds made in pursuance thereof, during which the property should be restricted to residential use, the law would imply a reasonable time. We can not agree that the judgment should be reversed for any of the reasons here stated. Assuming, without deciding or intimating, that the limitation of twenty years placed upon the restriction against residence by persons of African descent should be applied by construction to the general restriction as to residential use, we learn from the record that these restrictions were contained not only in the bonds for title executed in 1912 and 1913, but were embodied in the same language in the deeds subsequently

executed by the plaintiff, both of such deeds having been made in the year 1920. So, if the same period should be held to apply to both restrictions, the restriction as to residential use would not expire until the year 1940. Under the instant record, the deeds, and not the bonds for title, will control upon this question. This is true for the reason that in executing the deeds the limitation of twenty years was made to run from the dates of these instruments, and not from the dates of the bonds for title. If, by reason of mistake or other cause remediable in equity, the deeds do not speak the real intention of the parties, the defendants should have prayed for a reformation, so as to make them conform to the bonds for title. *Carr* v. *Augusta Grocery Co.*, 183 *Ga.* 346 (188 S. E. 531). Again, if the restriction as to residential use should be limited to a *reasonable* time, this would raise an issue of fact; and this court can not say as a matter of law that a reasonable time has elapsed since the deeds to the lots were executed.

■ It appears that the plaintiff sold lot 8 before the sale of lots 1 and 2, and lot 3 afterwards, both without restriction as to residential use. The owner of lot 3 placed a store building thereon about four years ago. It is contended that in selling lots 8 and 3 without restriction, the plaintiff violated the principle that he who would have equity must do equity, and for this reason can not enforce in equity the covenant which it exacted in the sale of lots 1 and 2. Certainly there is no merit in this contention, so far as the previous sale of lot 8 is concerned. The plaintiff as owner of lots 1 and 2 had the legal right of imposing this restriction at the time of selling them, regardless of any conditions annexed to previous sales; and the equitable maxim invoked could have no application referable to previous transactions. Nor can the principle be held to apply as a matter of law, so as to defeat the plaintiff, because of the subsequent sale of lot 3, without restriction. At the time of selling lots 1 and 2 the plaintiff had established no general or uniform scheme of restriction to residential use; and this fact is emphasized by the defendant in the present case. Whatever reason the plaintiff may have had in placing the restriction on lots 1 and 2, there is nothing in any contract made in reference to these two lots, or in the proved circumstances, to indicate any express or implied agreement, or representation, that the same restriction would be imposed upon other lots thereafter

sold. Accordingly, the facts that it afterwards sold lot 3 without restriction, and that the owner erected a store building thereon, do not bar the present action on the ground that the plaintiff has failed to do equity in the premises. Since it is true that the plaintiff had adopted no uniform plan of restriction as to residential use, the sales of lots 1 and 2 should be regarded as separate and distinct transactions, isolated as it were from other sales, whether previous or subsequent; and consequently these two lots and the covenants relating thereto constitute the subject-matter of this suit. The maxim referred to requires only that the party seeking equitable relief shall give effect to all equitable rights of the other party respecting the subject-matter of the litigation. Code, § 37-104; *Ansley* v. *Wilson,* 50 *Ga.* 418, 422; *Employing Printers Club* v. *Dr. Blosser Co.,* 122 *Ga.* 509 (2), 517 (50 S. E. 353, 69 L. R. A. 90, 106 Am. St. R. 137, 2 Ann. Cas. 694). While the sale of other lots without restriction might tend to show that the plaintiff would not be damaged by the erection of the filling-station, this fact alone would not amount to a failure to do equity.

■ The defendant's third contention is that the plaintiff, in selling adjacent and neighboring lots without restriction, after the sale of lots 1 and 2, parted with its right to enforce the covenant as to these lots, and for this reason the plaintiff was not a proper person to institute the present action. There is no merit in this contention. The plaintiff is a party to the covenant, and it can not be said that the suit should have been instituted by some other person or persons instead of the plaintiff as the covenantee. Code, § 3-108. It may be that under the facts of this case the plaintiff is the only person that could have brought the suit; but this question is not involved. The contention under consideration relates more to the matter of damages than to parties,' and is substantially the same as the fourth and last contention, whereby it is insisted that the plaintiff has totally failed to show damage. Both contentions are based upon the asserted ground that the covenant or covenants in question were made for the protection of adjoining property, all of which the plaintiff has sold. It does not appear that the plaintiff brought the suit for the benefit of any person except itself, but the evidence shows that it still owns about thirty-one lots in the subdivision, including one lot restricted to residential use, situated in the same block with lots 1 and 2, and about

300 feet therefrom. The plaintiff is also the owner of other residential property in the same vicinity, though not in the same subdivision. The record authorizes the inference that lots 1 and 2 constituted an important corner, and that a violation of the covenant relating thereto would tend to reduce the value of the plaintiff's other property, both within and without the subdivision, and that the resulting damage could not be readily and accurately estimated in money. The record does not show when the plaintiff acquired the properties neighboring but not within the subdivision developed by it. They might have been acquired after the dates of the covenants here involved; but, even so, the plaintiff could have exacted these covenants with the view of purchasing additional property in the same vicinity and of having the same protected against the use of this particular corner for business purposes. Such a right on the part of the plaintiff could have existed within contemplation of the parties at the time the covenants were made. See, in this connection, Code, § 20-1407. The fact that the property was later zoned for business by the City of Atlanta did not destroy the plaintiff's right as given by the contracts.

Under the pleadings and the evidence, the court did not err in granting the injunction. The following decisions, among others, have been considered in reaching this conclusion. *Hancock* v. *Gumm*, 151 *Ga.* 667 (107 S. E. 872); *Rosen* v. *Wolff*, 152 *Ga.* 578 (110 S. E. 877); *Smith* v. *Gulf Refining Co.*, 162 *Ga.* 191 (134 S. E. 446, 51 A. L. R. 1323); *Renfroe* v. *Walden*, 164 *Ga.* 77 (137 S. E. 831); *Phillips* v. *Blackwell*, 164 *Ga.* 856 (139 S. E. 547); *Reeves* v. *Comfort*, 172 *Ga.* 331 (157 S. E. 629); *Godfrey* v. *Huson*, 180 *Ga.* 483 (179 S. E. 114).

*Judgment affirmed. All the Justices concur.*