WARDLAW *et al. v.* SOUTHERN RAILWAY COMPANY *et al.*

100

No. 15058. February 8, 1945. Rehearing denied March 7, 1945.

*I. C. Adams,* for plaintiffs.

*D. W. Mitchell* and *R. Carter Pittman,* for defendants.

JENKINS, Presiding Justice. Only the second division of the syllabus seems to require any further elaboration. Where the owner of realty sells a portion thereof, imposing on his vendee restrictions relating to the use of the estate conveyed, thus creating a covenant running with the land, there is a presumption, in the absence of any facts and circumstances showing a contrary intent, that the restriction is imposed for the benefit of the land retained, with the result that an implied inhibition is created as to the use of the portion of the land conveyed, for the benefit of the unsold portion. *Godfrey* v. *Huson,* 180 *Ga.* 483. (2) (179 S. E. 114). In *Gulf Oil Corporation* v. *Suburban Realty Co.,* 183 *Ga.* 847 (190 S. E. 179), there was a conveyance of lots, subject to a restriction that they were to be used for residence purposes only, by a grantor owning other contiguous and nearby properties, the deed containing no provision that the restriction was for the benefit of any person or property, and there being no uniform scheme of restrictions relating to use for residence purposes only. The court said (p. 854) that the record authorizes the inference that "a violation of the covenant relating thereto would tend to reduce the value of the plaintiff's other property, both within and without

the subdivision;" and stated further that such restrictions may even have contemplated the purchase by the grantor in the deed containing the covenant of additional property in the same vicinity, and of having such additional property protected by such restriction.

Turning to other jurisdictions, in the leading Massachusetts case of Peck v. Conway, 119 Mass. 546, under similar facts to the case under consideration, the court said, that the "owner of the fee had the right to sell his land subject to such reservations or restrictions as to its future use and enjoyment as he saw fit to impose, provided they were not contrary to public policy." After stating that the only question in the case is whether a grantee from the former owner who imposed the restriction is entitled to the same remedy as his grantor, the court continued: "The reservation creates an easement, or servitude in the nature of an easement, upon the land conveyed. If this easement was created for the benefit of the adjoining lot, of which the grantor in the deed remained the owner, and not for the personal convenience of the grantor, and was intended to be annexed to such lot, it would be appurtenant thereto, and would pass to a grantee thereof. The question whether such an easement is a personal right, or is to be construed to be appurtenant to some other estate, must be determined by the fair interpretation of the grant or reservation creating the easement, aided, if necessary, by the situation of the property and the surrounding circumstances. . . There is no suggestion that (the creator of the reservation) had other land in the vicinity, which could be benefited by the restriction. It is difficult to see how he would have any interest in restricting the use of the land sold, except as owner of the house lot which he retained. The nature of the restriction also implies that it was intended for the benefit of this lot. A prohibition against building on the land sold would be obviously useful and beneficial to this lot, giving it the benefit of better light and air and prospect; this is its apparent purpose, while it would be of no appreciable advantage for any other purpose. The fair inference is that the parties intended to create this easement or servitude for the benefit of the adjoining estate." In Clark v. Martin, 49 Pa. St. 289, the court held that, where the owner of two adjoining lots sold one which was on a corner, subject to a restriction that no building would be

erected on the back part of such lot over a prescribed height, and subsequently the remaining lot was sold without mention of the restriction imposed on the corner lot, the deed containing the restriction not reciting that the reservation was for the benefit of the grantor or his remaining property, such a reservation was for the benefit of the adjoining property of the common grantor, and created an obligation to the owner of that property, whoever he might be. In Watrous *v.* Allen, 57 Mich. 362 (24 N. W. 104, 58 Am. R. 363), the owner of a large amount of land in a village conveyed a lot subject to a restriction as to its use, but without any recital that the benefit was intended for any person or property. The *petition* alleged that the restriction was for the benefit of the grantor as owner of the lots and land in the vicinity and contiguous thereto, and that his rights were held by the plaintiff, who was a subsequent grantee of the original owner. In a suit by a grantee of the adjoining property, the court, upon the pleadings and proof, enjoined a violation of the restriction by a grantee of the restricted lot. In Coughlin *v.* Barker, 46 Mo. App. 54, while, under the special and peculiar facts and circumstances of the case, the restrictions were not upheld, the court said: "In every case there is a very strong argument in favor of the view that, such restrictions ought to be construed as imposing what is termed a negative easement upon the land conveyed, for the benefit of the land retained, or what is sometimes termed an equity in the land retained as against the land conveyed. To the argument that the grantor intended the restriction for his own personal benefit, and that it was a mere personal covenant, and not a covenant running with the land, it may generally be answered that the grantor could not intend it for his own personal benefit, except for his benefit as owner of the land retained, and that he should be benefited by it from no other circumstance than from the circumstance that it benefited the land which he retained."

The editor of the note, embodied in 21 A. L. R. 1292, makes this observation: "The rule adopted in this class of cases has been well stated to be that, where the common grantor of two adjoining lots sells one and retains the other, and puts in the deed of the one which he sells a covenant against building in a certain way, which covenant is manifestly intended for the benefit of the lot which is retained, and he afterward sells this lot to another, the

covenant passes to the assign of such lot as an appurtenance to it, or as an easement for the benefit of it, and such assign may enforce it against the owner of the other lot, whether he acquired the other lot immediately from the original vendor, or through mesne conveyances, or by devise, descent, or otherwise, from him, provided he took with notice of it, actual or constructive." In order to carry out such manifest intention of the parties, it is not necessary that such purpose should be expressly stipulated by the terms of the deed. Coughlin v. Barker, supra.

In quoting from these above-mentioned outside authorities, we do not mean to say that we adopt all the language employed in the course of the reasoning, but we regard the conclusions arrived at as sound. Any such restrictive clause shall be "construed in the light of the other facts in the record and the intention of the parties to the deed." *Smith* v. *Gulf Refining Co.*, 162 *Ga.* 191 (134 S. E. 446, 51 A. L. R. 1323) ; Meaney v. Stork, 80 N. J. Eq. 60, 65 (83 Atl. 492) ; Meigs v. Lewis, 164 Pa. St. 597 (30 Atl. 505) ; Electric City Land & Improvement Co. v. West Ridge Coal Co., 187 Pa. St. 500 (41 Atl. 458) ; Deeves v. Constable, 87 App. Div. 352 (84 N. Y. Supp. 592) ; Godfrey v. Hampton, 148 Mo. App. 157 (2) (127 S. W. 626).

(a) The rule would be somewhat different where there was a general building scheme in a subdivision for the purpose of selling lots under restrictive covenants. In such a case, the general scheme binds all the purchasers inter sese, not only as to the restrictions embodied in their respective deeds, but also as to such inhibitions as were embraced within the general scheme of the subdivision, of which they had, or were chargeable with, notice. *Atkinson* v. *England,* 194 *Ga.* 854, 857 (22 S. E. 2d, 798).

*Judgment reversed in part, and affirmed in part. All the Justices concur, except Wyatt, J., absent because of illness.*