297 Ga. 371
FINAL COPY

S14G1225.  MCLEOD v. CLEMENTS.

NAHMIAS, Justice.

We granted certiorari in this case to consider the following two questions:

(1)     Did the Court of Appeals err in "declin[ing] to follow Wardlaw v. Southern R. Co., 199 Ga. 97, 98 (1) (33 SE2d 304) (1945), for its statement that covenants running with the land bind subsequent owners thereof 'with or without notice'"?  McLeod v. Clements, 326 Ga. App. 840, 844 (755 SE2d 346) (2014).  See Ga. Const. of 1983, Art. VI, Sec. VI, Par. VI.

(2)     Was Wardlaw wrongly decided?

We conclude that the answer to both questions is no.  The statement from Wardlaw that the Court of Appeals declined to follow was dicta that does not govern this case, and Wardlaw was correctly decided based on the facts presented in that case.  We therefore affirm the judgment of the Court of Appeals.

1.     The appeal in this case followed the trial court's grant of partial summary judgment to Appellee Stan Clements, so we view the evidence in the light most favorable to the non-moving party, Appellant R. Jerry McLeod.  So

viewed, the record shows that H.E. McLeod, Sr. transferred a part of his land to H.E. McLeod, Jr. The parties agreed that McLeod, Jr. would dig a well on his land and give McLeod, Sr. and others living on McLeod, Sr.'s land (specifically Mrs. McLeod, Sr., Michael McLeod, and Appellant) water from that well free of charge. This agreement was put in writing in 1971 in an indenture that provided:

> [H.E. McLeod, Jr.], in consideration of the love and affection that he bears for [Mr. and Mrs. McLeod, Sr., Michael McLeod, and Appellant], does hereby give and grant unto [them] the right to maintain a water line at its present location from the well on the lands of [McLeod, Jr.] to the edge of the property of [McLeod, Jr.] and to use water from said well free from all charges. This right shall first be in Mr. and Mrs. H.E. McLeod, Sr. jointly for and during their joint lives and then to the survivor of them as long as they live on the property now occupied by Mr. and Mrs. H.E. McLeod, Sr. as a home.

Appellant and Mrs. McLeod, Sr. continued to live on the land benefited by the 1971 water agreement. The pipes and water line connection have been visible at the well site and marked by a post since 1971. In 1992, McLeod, Jr. deeded the well property to Michael McLeod. Michael and Sally McLeod then sold the well property to Ryan and Melissa Reeves on August 28, 1996. The Reeveses' deed, which was recorded on September 27, 1996, included a

2

"Special Agreement" in which the Reeveses agreed to provide water to the house occupied by Appellant and Mrs. McLeod, Sr. as long as Appellant and Mrs. McLeod, Sr. occupied the benefited property and paid the Reeveses a reasonable monthly fee for electricity and well maintenance costs. No mention was made of the 1971 agreement.[1]

Some time later in 1996, Appellant recorded the 1971 agreement. The well property then changed hands a few more times before it was sold to Appellee in 2007. Appellee's deed says that the property is "conveyed subject to that certain Special Agreement contained in a deed from Michael R. McLeod and Sally J. McLeod to Ryan Reeves and Melissa Reeves." In his affidavit, Appellee avers that he was not aware of the 1971 water agreement when he purchased the property, but he was aware of the 1996 agreement that required him to provide water to Appellant and Mrs. McLeod, Sr. via the visible pipes on the burdened land. (Mrs. McLeod, Sr. is now deceased.)

It appears that for a short time, Appellee and Appellant operated under the 1996 agreement, but in 2008, after Appellant stopped paying and Appellee cut

---

[1] This deed is not in the appellate record, but the parties do not dispute its existence or content.

off the water supply, Appellant filed a complaint seeking to require Appellee to provide him with water. The trial court then entered several orders that were reversed or vacated on procedural grounds during four trips to the Court of Appeals.[2] Once the case was back in the trial court for a fifth time, Appellee moved for summary judgment, asking the court to find that he is not bound by either the 1971 or the 1996 water agreement. On September 7, 2012, the trial court granted Appellee summary judgment as to the 1971 agreement and denied him summary judgment as to the 1996 agreement.[3]

The Court of Appeals affirmed the partial grant of summary judgment, holding that even assuming the 1971 water agreement is a covenant running with the land, it is not enforceable against Appellee, a bona fide purchaser for value, because it was recorded outside his chain of title and Appellee did not have actual or constructive notice of it. See McLeod, 326 Ga. App. at 843-846. In reaching this decision, the Court of Appeals said, "[i]n the face of the well-developed law [we have] set forth above, we decline to follow Wardlaw v.

---

[2] The fourth Court of Appeals decision sets out the procedural history of this case in detail. See McLeod v. Clements, 310 Ga. App. 235, 235-237 (712 SE2d 627) (2011).

[3] Appellee did not cross-appeal the partial denial of summary judgment.

4

Southern R. Co., 199 Ga. 97, 98 (1) (33 SE2d 304) (1945), for its statement that covenants running with the land bind subsequent owners thereof 'with or without notice.'" McLeod, 326 Ga. App. at 844. We granted Appellant's petition for certiorari to consider the two questions set forth above.

2. We first consider the facts of Wardlaw and the context of its statement that covenants running with the land bind subsequent owners "with or without notice." In Wardlaw, a grantor conveyed property to a railroad and stipulated in the deed that the land could be used only for a railroad depot; the railroad company later sold the land with a deed that made no mention of the restriction on the land. See 199 Ga. at 100. The defendant purchasers therefore took the property without *actual* notice of the covenant, but they had *constructive* notice of it, because the covenant was in a deed in the defendants' chain of title. See id. See also Gamble v. Brooks, 170 Ga. 662, 662 (153 SE 759) (1930) (explaining that a recorded deed that is a link in the purchaser's chain of title provides constructive notice of the contents of the deed).

Based on these facts, the Court held in relevant part that "the [railroad company] had the right to convey to the defendants . . . such title as it had to the property in question; and, while it did not embody the restrictions in its deeds,

5

since these were covenants running with the land, *of which their grantees had at least constructive notice*, it was not necessary to do so." Wardlaw, 199 Ga. at 99 (3) (emphasis added). This holding comports with the basic doctrine that

> a bona fide purchaser from the grantor without [actual] knowledge or constructive notice of the existence of the easement would take title free from the easement, and he may assume that there is no easement except as shown of record or by open and visible indications on the land itself . . . .

Burk v. Tyrrell, 212 Ga. 239, 243 (91 SE2d 744) (1956). See also OCGA § 23-1-19 ("If one with notice sells to one without notice, the latter shall be protected."); Farris v. Nationsbanc Mtg. Corp., 268 Ga. 769, 771 (493 SE2d 143) (1997) ("A bona fide purchaser for value is protected against outstanding interests in land of which the purchaser has no notice."); Rosen v. Wolff, 152 Ga. 578, 585-586 (110 SE 877) (1922) ("[I]n equity, covenants relating to land . . . are frequently enforced against subsequent grantees with notice . . . . It is only necessary that the covenant concern the land or its use, and that the subsequent grantee has notice of it."); 20 AmJur2d Covenants, Conditions, and Restrictions § 50 ("Real covenants are enforceable against all grantees of the original covenantor, though a subsequent purchaser takes the property subject to the covenant only if it had actual or constructive notice that the covenant

6

burdened the land.").

Understood in its full factual and legal context, the pertinent statement in Wardlaw, although poorly articulated, is properly read as saying that covenants running with the land will bind subsequent purchasers who take the burdened property "with or without *actual* notice" or, more precisely, "with actual notice or constructive notice, but not with no notice at all."[4]   Although Appellant argues that covenants running with the land should be given special treatment and enforced regardless of notice, Wardlaw offers no reason — and we see none — for allowing such covenants to stand as an exception to the well-settled rule protecting bona fide purchasers of land from being bound by restrictions of which they had no actual or constructive notice.

Thus, Wardlaw was correctly decided on its facts, and to the extent that the pertinent statement can be read to create an exception to the rule protecting bona fide purchasers with *no* notice, the statement was dicta, because Wardlaw

---

[4] The statement in Wardlaw appears during a discussion of the difference between the notice requirements for restrictive agreements and those for negative covenants running with the land.  See 199 Ga. at 97.  As the Court of Appeals noted, the distinction Wardlaw made between restrictive agreements and negative covenants running with the land has been questioned.  See McLeod, 326 Ga. App. at 844 (citing In re Jenkins, 74 BR 440, 448, n. 1 (Bankr. N.D. Ga. 1987)).  See also 3 Daniel F. Hinkel, Pindar's Ga. Real Estate Law & Procedure § 22-10 (7th ed., updated April 2015) (explaining that Wardlaw's distinction "is difficult if not impossible to maintain").  We express no opinion in this case on the validity of the distinction.

did not involve such a purchaser. See Little v. Fleet Finance, 224 Ga. App. 498, 501 (481 SE2d 552) (1997) ("'[S]tatements and comments in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case in hand are obiter dicta, and lack the force of an adjudication.'" (citation omitted)). To be crystal clear, we hereby disapprove any such reading of Wardlaw. And we conclude that the Court of Appeals did not err in rejecting Wardlaw's imprecise statement, although it would have been preferable for the court to expressly identify that statement as dicta to make clear that in "declining to follow" it, the court was not deviating from a precedential holding of this Court. See Ga. Const. of 1983, Art. VI, Sec. VI, Par. VI ("The decisions of the Supreme Court shall bind all other courts as precedents.").

3.     Turning now to the facts of this case, and assuming (as the Court of Appeals did) that the 1971 water agreement qualifies as a covenant running with the land, the record shows that Appellee did not have actual or constructive notice of that agreement. Appellant points to the visibility of the well pipes and post on Appellee's property as providing notice, but the presence of the pipes and post is fully explained by the 1996 water agreement, which is in Appellee's

8

chain of title and of which he admits knowledge. And the 1971 agreement was recorded outside Appellee's chain of title to the burdened property, so unlike the purchasers in <u>Wardlaw</u>, Appellee had no constructive notice of that agreement. See <u>Gamble</u>, 170 Ga. at 662 ("A deed lying outside of a purchaser's chain of title is not constructive notice of the instrument."); <u>Jenkins</u>, 74 BR at 448 ("Under the Georgia recording statutes, even if a deed is recorded, in order to operate as constructive notice to a bona fide purchaser, the deed must not lie outside the purchaser's chain of title.").[5]

For these reasons, the trial court did not err in holding that Appellee is not bound by the 1971 water agreement, and the Court of Appeals did not err in affirming that judgment.

<u>Judgment affirmed. All the Justices concur.</u>

---

[5] Appellant maintains that Appellee had constructive notice of the 1971 agreement because it was recorded on the same pages Appellee would have been required to examine as part of his title search. The record on appeal includes one unnumbered page from the deed index showing the recording of the 1971 agreement and a different unnumbered page showing Michael and Sally McLeod's transfer of the well property to the Reeveses, indicating that the notations do not appear on the same page. Appellant's argument seems to be that the notations are on facing pages, so that if Appellee opened the deed index to the listing for the Reeveses' deed, he would also have seen the listing for the 1971 agreement. But there does not appear to be evidence of this. Moreover, the Court of Appeals found that the deed index pages referenced by Appellant were not before the trial court when it ruled on the summary judgment motion. See <u>McLeod</u>, 326 Ga. App. at 845-846.

9

Decided June 29, 2015.

Certiorari to the Court of Appeals of Georgia – 326 Ga. App. 840.

R. Jerry McLeod, pro se.

The Sullivan Firm, Stephen R. Sullivan, Bree O. Sullivan, for appellee.