JAMES O. WINSTON, Appellant, *v.* 524 WEST END AVENUE, INC., Respondent, Impleaded with 530 WEST END CORPORATION and Others, Defendants.

First Department, June 24, 1931.

*Martin Conboy* of counsel [*David Asch* with him on the brief; *Martin Conboy*, attorney], for the appellant.

*Arthur B. King* of counsel [*Buhler, King & Miller*, attorneys], for the respondent.

MERRELL, J. Plaintiff is the owner in fee of a parcel of real property situate on the northeasterly corner of West End avenue and Eighty-fifth street, borough of Manhattan, New York city, and was in possession thereof for more than one year prior to the commencement of the present action. Plaintiff's said real property has a frontage of twenty-seven feet two inches on West End avenue, and extends easterly on Eighty-fifth street a distance of one hundred feet, and is rectangular in form. Plaintiff has owned this real property since 1909, the same being known as 520 West End avenue. The lot is improved with a five-story and basement building, originally designed as a private residence. In 1918 plaintiff, with full knowledge of and without objection of defendant, respondent, or its predecessor in title, converted his building into an apartment house of nine apartments, at a cost of $22,150. Plaintiff received title to the real property in question through various mesne conveyances from November 16, 1891, when Robert Gordon and Joseph Gordon, who then owned said real property, conveyed same to Richard Goodman Platt. In connection with the conveyance of said real property from the Gordons to Platt and on November 14, 1891, the Gordons, as parties of the first part, entered into an agreement with said Platt and other owners of real property in the vicinity of the premises aforesaid, wherein it was agreed between the parties thereto, their heirs, executors, administrators and assigns, that the parties " shall not erect, or cause or procure, permit, or suffer to be erected upon the premises above described, or any part thereof, any building other than of brick or stone, with roofs of slate or metal, nor at any time hereafter erect or cause or procure or permit or suffer to be erected upon said lot, or any part thereof, other than one or two (but not more

than two) private dwelling houses each designed for the use and occupation of but one family." It was also expressly agreed therein that the covenants therein contained should run with the land and apply to and bind the personal representatives, heirs and assigns of the respective parties thereto. Through the mesne conveyances whereby plaintiff derived title to said real property, the same was conveyed subject to all incumbrances thereon.

Plaintiff brings the present action, pursuant to the provisions of sections 500 and 501 of the Real Property Law (added by Laws of 1920, chap. 930, as amd. by Laws of 1925, chap. 565; since amd. by Laws of 1929, chap. 639), to compel the determination of any claim asserted adverse to that of plaintiff which defendants, or either of them, may make, or any claim which appears from the public records either defendant might make of any estate in plaintiff's real property, including any claim in the nature of an easement therein. Plaintiff brings the present action against the several defendants who claim or might claim an easement or interest in plaintiff's property by virtue of mesne conveyances from the owners of neighboring real property affected by the agreement aforesaid. None of the defendants have answered in the present action or seek to deny the relief sought by plaintiff, except defendant, respondent, 524 West End Avenue, Inc., the present owner of the three lots lying northerly of plaintiff's premises on the easterly side of West End avenue. These three lots have been assembled by defendant, respondent, and its predecessors in title and there has been erected thereon a fifteen-story apartment house, the southerly line of which abuts upon the property of plaintiff for its entire depth. In the southerly side of this fifteen-story apartment house of defendant, respondent, above the five-story apartment house now upon plaintiff's premises, windows have been placed looking out over plaintiff's building to the south. It is the contention of the respondent that if plaintiff be granted the relief sought herein, plaintiff will be enabled to erect such a structure on his premises as will effectually cut off the easement which defendant insists it has of light and air. An examination of the restrictive covenant contained in the agreement entered into by plaintiff's predecessors in title discloses that no easement of light and air was ever granted to defendant, respondent. At most, the premises now owned by plaintiff were, by the agreement, subjected to a restrictive covenant against the erection of any buildings thereon except one or two one-family residences. No easement of light and air was ever granted to defendant, respondent, or either of its predecessors in title. Defendant, respondent, has, in effect, by the judgment appealed from, been granted a perpetual easement of light and air in the real property of plaintiff.

We do not think defendant, respondent, was entitled to such adjudication.

At the time of the imposition of the restrictive covenant in question, all the real property in the vicinity was occupied by private residences not exceeding five stories in height. In 1891, when the restriction was imposed, the present-day lofty apartment houses were unknown in that vicinity. It was clearly the intent of the parties, in imposing the restriction, that on the property now owned by plaintiff, in keeping with other buildings of the neighborhood, there should only be erected a building of brick or stone to be occupied by not exceeding two dwelling houses, each designed for the use and occupation of but one family. The parties thereby intended to maintain the locality as a purely residential one and to prevent the erection of any house for the use of more than two families. Since that time the character of the neighborhood has entirely changed. As shown by the photographs introduced in evidence, West End avenue is now almost completely built up with apartment houses of twelve or more stories in height. The five-story apartment house to which plaintiff has thus far been confined is in striking contrast with the towering apartment houses on all sides. Defendant, respondent, herein and its predecessor in title, by the erection of the fifteen-story apartment house adjacent to the property of plaintiff on the north, has clearly destroyed all reason for the continuance of the restriction on plaintiff's property. Undoubtedly, had the neighborhood remained in the condition in which it was at the time the restriction was imposed, plaintiff would not be entitled to the relief which he seeks in the present action. The right to restrict plaintiff from erecting upon his own land such building as he desires must be governed by the conditions existing at the time the restriction was imposed. In *Johnson* v. *Hahne* (61 N. J. Eq. 438, at p. 443) the New Jersey court held that " The right to restrict an owner of adjoining land from building on his own land, whether gained by use or grant, must be confined to the subject-matter of the use or grant, and the restriction on the owner of the servient tenement must be substantially the same. The reason, as stated by Mr. Justice PATTERSON, in an opinion in *Blanchard* v. *Bridges*, 4 Adolph. & E. 176, 191 (1835), a leading case, is that the act of the owner of the adjoining land, from which the right of unobstructed access of light and air over the land flows, must have reference to the state of things at the time when it is supposed to have taken place, and, as the act of the one is inferred from the enjoyment of the other owner, it must be measured by that enjoyment   *   *   *."

In *Norris* v. *Hoffman* (133 App. Div. 596; affd., 197 N. Y. 578)

this court said (at p. 600): " In the case now before us, when the easement was created, the three lots involved were occupied y their respective owners for private dwellings, and it seems to me perfectly obvious from the language used in the grant that it was intended, and the complaint so alleges, that the carriageway should be used only for the benefit of such owners as a carriageway to the private stables in the rear of their residences and while they so occupied them. When these dwellings were torn down and the defendants erected in their place a large apartment hotel they thereupon extinguished whatever easement they had theretofore in the carriageway, because such act was inconsistent with the terms of the reservation."

At the time this claimed easement was granted the premises owned by respondent's predecessor in title were occupied by private houses set back from the street and not extending the full depth of the lots. It was the clear intention of the parties, in imposing the restriction upon said real property now owned by plaintiff, to mainta n the then existing residential character of the neighborhood. By reason of the changed condition, the covenant aforesaid is no longer of any value. The restrictive covenant itself clearly disproves any intention to grant to adjacent owners any easement of light or air upon the property of plaintiff's predecessors in title. By the restriction in question plaintiff is not forbidden from erecting a building upon his property that would effectually cut off any light or air which defendant, respondent, at present enjoys, and even if such restriction had not been destroyed, plaintiff might erect on his property immediately adjacent to that of defendant, respondent, a building even higher than that of said defendant, so long as it is not devoted to the occupation of more than one family for residential purposes. Clearly the respondent would suffer no damage from the extinguishment of the only restriction placed upon plaintiff's property. What the respondent is trying to maintain is an easement of light and air which was never granted to it by the agreement of November 14, 1891. Not only has there been a change in the neighborhood conditions, but the affirmative acts of the respondent were such as to destroy any easement or right created by the agreement of November 14, 1891. The case of *Deeves* v. *Constable* (87 App. Div. 352) is directly in point. In that case this court, per HATCH, J., wrote (at pp. 358, 359): " The covenant in the deed contains no reservation of any easement of light and air, and the circumstances did not permit of any benefit to be derived therefrom to the dwelling so long as it continued to remain upon the site where it then stood or to any part of it except the front. *When the dwelling was torn down and*

*the business block constructed, it occupied the vacant space in front of nine and one-half feet, and by constructing upon the building line it received for its front the same light which it had received when it stood farther back. Such removal carried with it no right to put windows in the side walls, and thereby acquire an easement of light and air over the restricted space for the benefit of its side.* The restrictive covenant does not provide for it and no conditions are shown to exist which require that it should be applied to it. Easements of light and air are protected only where they are reserved and remain beneficial to the property in whose favor they exist. (*Zipp* v. *Barker*, 40 App. Div. 1; affd. on appeal, 166 N. Y. 621.) " (Italics are the writer's.)

This Appellate Division in the *Deeves* case, further writing, held (at p. 357) that " when the successors of the grantor in the deed tore down the dwelling and erected a business block thereon, which extended over the open space in front of the dwelling house to the building line upon the northerly side of Seventeenth street, it amounted to an extinguishment of whatever easement had theretofore existed upon the adjoining property. Such act was inconsistent with the terms of the restrictive covenant, its language and intention. It was a recognition of changed conditions, which had converted this street from a residential street and devoted it to business use. The building, which was erected upon this site, was itself devoted to business and was a conclusive act, and conclusively evidenced an intention upon the part of the successors in the grant to disregard and nullify the covenants which had been imposed for the enjoyment of the property as a dwelling. The authorities which hold that such acts are inconsistent with the continued existence of the covenant are numerous. (*Snell* v. *Levitt*, 110 N. Y. 595; *Heartt* v. *Kruger*, 121 id. 386; *Dyer* v. *Sanford*, 9 Metc. 395; *Canny* v. *Andrews*, 123 Mass. 155.) Nor can the covenant be held to continue and remain operative as an easement for light and air over the restricted space."

The erection by plaintiff upon his premises of an apartment house similar to others in that locality certainly will not lessen the value of the neighboring property, except to the extent, possibly, that the defendant, respondent, may be deprived of certain air and light which it has heretofore enjoyed, but which was never granted to it. The court at Special Term found that the changed conditions have converted the neighborhood from one of private residence to an apartment house neighborhood. These changed conditions were recognized by the respondent's predecessor in title when it erected the fifteen-story apartment on lots previously occupied by private dwellings. By putting windows in the south

wall of its building, as it towered above the building upon plaintiff's property, defendant, respondent, acquired no rights whatever with reference to the property of plaintiff. In *Batchelor* v. *Hinkle* (210 N. Y. 243, 251) the Court of Appeals quoted with approval from the opinion in *McClure* v. *Leaycraft* (183 N. Y. 36, 44), as follows: " ' Under the circumstances now existing the covenant is no longer effective for the purpose in view by the parties when they made it, and the enforcement thereof cannot restore the neighborhood to its former condition by making it desirable for private residences. If the building restriction were of substantial value to the dominant estate, a court of equity might enforce it even if the result would be a serious injury to the servient estate, but it will not extend its strong arm to harm one party without helping the other, for that would be unjust.' "

We think the language of the Court of Appeals above quoted is clearly pertinent to the question presented upon this appeal. Clearly the restriction against the erection of a dwelling for more than one family, imposed by the agreement of November 14, 1891, is of no present value to respondent. In *Schefer* v. *Ball* (53 Misc. 448; affd., 120 App. Div. 880; affd., 192 N. Y. 589) the trial court said (at p. 456), concerning a restrictive covenant no longer operative by reason of lapse of time and change of locality: " To enforce this covenant so long after its usefulness has disappeared, and to forbid the defendant to make this most valuable use of his property, would be injuring the defendant without conferring any benefit upon the plaintiff. For this reason also the injunction should be refused. *Trustees of Columbia College* v. *Thacher*, 87 N. Y. 311. There should be judgment for the defendant, dismissing plaintiff's complaint, with costs."

The only advantage to respondent flows from the continuance of the restriction, thereby enabling respondent to enjoy privileges which were never granted to it. The restriction in question was not only for the benefit of respondent's predecessor in title, but was for the benefit of many other property holders in the neighborhood. Respondent alone opposes the granting to plaintiff of the relief which he seeks. In this regard the Court of Appeals, in *Batchelor* v. *Hinkle* (210 N. Y. 243, 251), stated the following equitable rule: " * * * A court of equity may take into consideration the fact that all the interested persons, or the most of them, are willing to waive the enforcement of a covenant when injunctive relief to restrict its violation is sought by one of their number."

We are, therefore, of the opinion that the court improperly denied plaintiff the relief which he sought in the present action, and that there was no good ground for restraining plaintiff from

such use of his property as the existing conditions would warrant. The conclusions of law contained in the decision of the court, numbered 3, 4, 5, 6 and 7, should be reversed, and additional findings of fact and conclusions of law should be made in accordance herewith.

The judgment appealed from should be reversed, with costs against the defendant, respondent, and judgment directed in favor of the plaintiff for the relief which he seeks in the present action, with costs.

FINCH, P. J., O'MALLEY, SHERMAN and TOWNLEY, JJ., concur.

Judgment reversed, with costs against the defendant, respondent, and judgment directed in favor of the plaintiff dismissing the counterclaim and for the relief demanded in the complaint, with costs. The findings inconsistent with this determination should be reversed and such new findings made of facts proved upon the trial as are necessary to sustain the judgment hereby awarded. Settle order on notice.