S. S. Kresge Company and another, Appellants, vs. Garrick Realty Company, Respondent.

*October 10—November 9, 1932.*

308

The cause was submitted for the appellants on the briefs of *Lines, Spooner & Quarles,* attorneys for S. S. Kresge Company, and *Douglass Van Dyke,* attorney for Anne Hamilton McIntosh, all of Milwaukee, and for the respondent on that of *Olwell & Brady* of Milwaukee.

FOWLER, J. The appellant assigns as error that several of the findings of fact of the trial court are against the clear preponderance of the evidence and that as a consequence the judgment is erroneous. However it may be as to other findings, if any one of three of them is supported by the evidence the judgment must be affirmed, and we shall consider only these three. The three are, in substance, that (1) the wall is unsafe and dilapidated; (2) the plaintiff's predecessor in title abandoned the wall as a party wall; (3) conditions have so changed as to render the purpose of the party-wall agreement not applicable.

(1) Some of the evidence in support of this finding is that when the present building of plaintiff was constructed the exposed surface of the party wall was cracked; the piling then extended eight or nine feet above the water level of the ground; and in the opinion of the architect who prepared the plans for the plaintiff's building the wall was then insufficient to support a three-story building on plaintiff's premises unless a row of columns was placed down the center to aid in supporting floors; some cracks in the wall have developed in the wall which were not present at that time; the wall is of insufficient thickness to comply with present city building ordinances. Since commencement of the suit the plaintiff has tied the wall to its adjacent building; before defendant's building was torn down the plank under its rear wall beneath a crack "had completely rotted and the building was settling," and presumably the foundations of the two walls were of like construction. Wood under ground above ground water level will quickly decay.

If the ground water level is the same now that it was in 1915 when plaintiff's building was erected, that fact and the other evidentiary matters above stated amply warrant the conclusion of the trial judge that the wall is unsafe. A condition once proved to exist is presumed to continue in absence of evidence to the contrary. There is no evidence that the exposed condition of the piles and plank did not continue and does not now exist. It is true that the evidence shows the exposed condition at the time of the former suit was supposed by one of the witnesses to be caused by the ground water seeping into an underground conduit and draining away, and that the witness understood that efforts were made to render the conduit water tight against seepage, and understood also that the conduit had been abandoned and filled with earth since the former trial; but this falls far short of proving that the ground water level has been restored and was restored before the exposed piling and plank had become so disintegrated as to render the wall unsafe. We are of opinion that the finding of unsafety is sufficiently supported by evidence and must stand. If the wall is unsafe, it is manifest that the defendant was within its rights in tearing it down. Its existence would endanger automobiles parked upon the premises and the persons and lives of persons on the premises in connection with its use for parking purposes.

(2) At the time the defendant's building was erected the plaintiff's predecessor in title refused to pay any part of the cost of the wall, as the party-wall agreement required it to do in case it made use of it. It grounded its refusal on the claim that it was making no use of the wall. The plaintiff's assignor in *Badger State Inv. Co. v. Miller,* 168 Wis. 582, 170 N. W. 256, procured an adjudication establishing this claim. That adjudication is *res adjudicata* and binding on the plaintiff as the privy of its assignor. It is true that plaintiff now claims that adjudication was erroneous, in that its predecessor did in fact make use of the party wall to protect its

curtain wall from the weather, and was enabled by it to construct its curtain wall of less thickness than it would otherwise have been necessary to construct it under the building ordinance of the city then in force. But plaintiff is estopped from claiming the adjudication then procured by its assignor was erroneous; and it is especially fitting that it be held to be so estopped because it still refuses to pay any part of the cost of the wall which it is now claiming it is using and has right to use. The contract provision in this respect was that when the plaintiff's predecessor in title should erect a building "contiguous to first party's lot and shall (should) *need* said party wall, said party wall *may be used* by her for so much of the depth and height thereof as she may require for the building" upon paying one-half the cost. The plaintiff now claims to need and to be in fact using the wall for its whole height. If the plaintiff is relieved from obligation to pay one-half the cost of the wall, it is so relieved by virtue of the judgment procured by its predecessor. But that judgment, in determining that the plaintiff therein was not required to pay, determined that the plaintiff therein was not using the wall, and that determination is as binding on this plaintiff as a determination that it is not using the wall as is the adjudication that the plaintiff need not pay for the wall binding upon the defendant. "One cannot have his cake and eat it too." The plaintiff's assignor ate its cake, and the plaintiff cannot now have it.

All this seems too plain to require citation of authorities to support it. But bearing in mind that party-wall arrangements create easements and easements are servitudes, if authority be necessary, the following deleted quotation from the opinion of this court in *Stenz v. Mahoney,* 114 Wis. 117, 121, 89 N. W. 819, seems sufficient:

"Rights of the sort claimed by plaintiffs are servitudes, and may be extinguished . . . by the act of the party. A servitude may be extinguished by renunciation of the party

entitled to it, either express or implied. . . . Any act wholly incompatible with the nature and exercise of the servitude is sufficient to extinguish it."

The act of plaintiff's assignor in claiming and procuring an adjudication of non-liability to pay, and the plaintiff's refusal to pay for one-half the wall, are "wholly incompatible with the nature and exercise" of right to retention of the wall, and they amount to an "implied renunciation" of such right.

(3) When the building torn down by the defendant was constructed in 1889 it was considered by both parties to the party-wall agreement that a three-story building would answer the business needs of the location and produce an income adequate for the investment covered by the land value and building cost. Since then the city has so grown and the locality has so developed that the land has become so valuable that a building of ten stories or upwards is required to produce income to cover these items. The reason for the party-wall agreement no longer exists and the "easement ceases with the cessation of the reason which called it into existence." *Duncan v. Rodecker,* 90 Wis. 1, 4, 62 N. W. 533; *Heartt v. Kruger,* 121 N. Y. 386, 24 N. E. 841; *Bull v. Burton,* 227 N. Y. 101, 124 N. E. 111; *Hoffman v. Kuhn,* 57 Misc. 746, 34 Am. Rep. 491. While this rule arose in cases wherein buildings were destroyed by fire, it is not limited, either in reason or in practice, to such cases, in absence of agreement as to the term for which the agreement shall run. *Partridge v. Gilbert,* 15 N. Y. 601, 69 Am. Dec. 632; *Hieatt v. Morris,* 10 Ohio St. 523, 78 Am. Dec. 280; *Winston v. 524 West End Ave.* 233 App. Div. 5, 251 N. Y. Supp. 96.

The appellant urges that the changed condition here involved does not warrant application of the principle because in case plaintiff's building should burn down and it were un-

able to finance a new building suitable to the location, it might want to use the party wall for the construction of a building of three stories or less that would produce income more than adequate to cover its cost, even though inadequate to cover the land value, and thus in some degree receive benefit from the party wall. It seems sufficient to say in respect to this that there is no evidence that the plaintiff would so desire to use the wall on the contingency of its building burning or that it would be unable to finance the construction of a suitable building. But we do not consider that the mere contingency of destruction of its present building by fire should continue the party-wall agreement in force forever. It is true that without contribution by one party to a party wall constructed by the other pursuant to such an agreement as we have here, the party not contributing has the right to have the wall stand as long as necessary to fulfil the purpose of the agreement. But the purpose of plaintiff's predecessor in entering into the agreement manifestly was to secure the right to use of the wall in the erection of a permanent building not to exceed three stories in height as a profitable and permanent investment, and it is also manifest that maintenance of the wall under the changed conditions will not fulfil that purpose. This renders the agreement no longer enforceable.

*By the Court.*—The judgment of the circuit court is affirmed.

WICKHEM, J., took no part.