KEW GARDENS CORPORATION, Respondent, *v.* CIRO'S PLAZA, INC., CIEN CORPORATION and UNDERWRITERS TRUST COMPANY, as Trustee under a Declaration of Trust, Dated December 5, 1936, and a Plan of Reorganization of Series 180768 of BOND AND MORTGAGE GUARANTEE COMPANY Investments Approved by Order of Supreme Court of State of New York, Dated November 20, 1936, Appellants.*

Second Department, April 8, 1941.

* Revg. 175 Misc. 475.

*William L. Hanaway* [*Stoddard B. Colby, Ernest Brooks, Jr., Richard J. Stull* and *Philip A. Gore* with him on the brief], for the appellants.

*Harry Hausknecht*, for the respondent.

TAYLOR, J.  This action is in effect for specific performance of a covenant contained in a deed executed by plaintiff to Wohlbro Construction, Inc. (hereinafter called Wohlbro), dated September 1, 1927, and duly recorded, which conveyed certain premises in Kew Gardens, upon which is now erected the Homestead Hotel. The covenant in material part reads: " And the party of the second part, for its heirs and assigns does hereby covenant to and with the party of the first part that neither the party of the second part nor its heirs or assigns shall or will without the consent by written instrument of the party of the first part, at any time hereafter erect or permit upon any part of the land conveyed by the present indenture any slaughter house, smithshop, forge, furnace, steam engine, brass foundry, nail. or other iron foundry or any manufactory of gun-powder, glue, varnish, vitriol, ink or turpentine, or for the tanning, dressing or preparing of hides, skins, or leather or any ale house, brewery, distillery or other place for the manufacture or compounding of intoxicating liquors, wine, beer, ale or spirits or for selling or dispensing the same in any form or for carrying on any other noxious, dangerous or offensive trade or business * * *." That deed also contained the following provision, pursuant to which the Homestead Hotel was erected: " The party of the first part hereby consents to the erection on said plot of a fire-proof building not exceeding four stories and basement in height to be used as a family hotel, provided the same does not in any respect come under or within the provisions of the Tenement House Law as now in force, and provided further that such building shall not be used for shops for the sale of merchandise or any commercial purpose other than the usual facilities provided and necessary for the conduct of the family hotel."

The judgment has the effect of prohibiting the operation of a cocktail lounge and bar now operated in the hotel premises, which are owned in fee by the defendant Underwriters Trust Company, as trustee (hereinafter called Underwriters). The hotel and the bar (cocktail lounge) are operated respectively by defendants

Cien Corporation (hereinafter called Cien) and Ciro's Plaza, Inc. (hereinafter called Ciro), respectively lessee and sublessee of Underwriters. The premises constitute part of the original Kew Gardens Development. Prior to September 1, 1927, they were owned by plaintiff. By mesne conveyances they became vested in Underwriters. Plaintiff owns an apartment property diagonally opposite and a short distance from the Homestead Hotel premises, and also the Kew Gardens Hotel property in the same development, a considerable distance to the north.

Plaintiff contended that the cocktail lounge and bar referred to was a violation of the covenant (*supra*) so far as the covenant prohibited the public sale of liquor and other alcoholic beverages.

In conveying properties in the development, plaintiff used a common form of deed containing restrictive covenants the same as those in its deed to Wohlbro (*supra*), which covenants were imposed to maintain the standard of the community. These restrictions reserved the right in plaintiff to cancel, modify or annul the same in whole or in part; and plaintiff at times exercised that reserved right as in its deed to Wohlbro (*supra*), and in its other deed dated May 16, 1925, to Mamor Construction Company of the (now) apartment premises above described as being diagonally opposite the Homestead Hotel, and now owned by plaintiff. It was conceded on the trial that " in all deeds wherein there were restrictive covenants Kew Gardens Corporation reserved to itself alone the right to change, modify or release said restrictive covenants, and that substantially all of the deeds of Kew Gardens Corporation contained restrictive covenants of one kind or another."

Although plaintiff objects to the sale of liquors and other alcoholic beverages to the public in the Homestead Hotel, the evidence demonstrates that wine and beer were so sold there since 1933, to the knowledge of plaintiff, whose president, upon occasion, had dined there. It also demonstrates that a wine and beer license was obtained in connection with that hotel, upon due publication, about December, 1933, that on August 17, 1939, upon similar public notice, a license to sell liquors to the public in connection with the Homestead Hotel was issued to Grenfell Catering Corporation, and that about ten days before the completion of the lounge and bar here in question, plaintiff knew that they were in process of construction. This action for an injunction was not commenced until March, 1940.

It also appears that at the time of the trial of this action, in September, 1940, liquor was being sold to the public, either with plaintiff's consent or by its sufferance, in Kew Gardens in the neighborhood of the Homestead Hotel, (a) in the Nagle Liquor

Store, in plaintiff's apartment property diagonally opposite that hotel, (b) in Kew Gardens Hotel, owned by plaintiff, (c) in the Kew Tavern, across the street from the Kew Gardens Hotel, (d) in the Colony Cafe, about one block therefrom, and (e) in the Kew Gardens Hofbrau, in proximity thereto.

The evidence further demonstrates that pursuant to its reserved right, plaintiff, prior to the installation of the cocktail lounge and bar here involved, had released restrictions on other parcels in the development so as to permit the sale of intoxicating liquors in stores and taverns. Shortly before the commencement of defendants' activities, of which plaintiff complains, plaintiff released the liquor restrictions affecting its own Kew Gardens Hotel premises. Plaintiff also countenanced and, indeed, abetted a change in the immediate neighborhood of the Homestead Hotel when plaintiff, before the activities of defendants here complained of, released restrictions against use for business purposes affecting certain premises directly across the street from the Homestead Hotel premises, so that they were nullified and permission given to erect " taxpayers " (business buildings) thereon; which structure have been erected. These last-mentioned premises were originally conveyed to Wohlbro on the same day as the premises here involved were conveyed to that grantee; and were originally restricted to residential purposes, although now, with plaintiff's consent, occupied by " taxpayers."

The evidence recited, and other evidence in the interest of brevity not detailed, was received on the trial in support of affirmative defenses duly pleaded.

The learned justice at Special Term decided the issues in favor of plaintiff on the theory that the covenant was intended primarily to restrict and prevent harmful competition of the defendants' Homestead Hotel property (*Korn* v. *Campbell*, 192 N. Y. 490, 495) with the Kew Gardens Hotel property, as of September 1, 1927. That theory is not suggested in the complaint. Plaintiff has recovered upon a cause of action not alleged therein. (*Walrath* v. *Hanover Fire Ins. Co.*, 216 N. Y. 220, 225.)

The plaintiff's recovery of judgment may not be sustained for the following additional reasons: The restrictive covenant sought to be enforced was not designed to prevent competition of others with the plaintiff in the sale of liquor and kindred beverages. The covenant was lacking in mutuality and unenforcible. (*Brighton by the Sea, Inc.,* v. *Rivkin,* 201 App. Div. 726, and cases cited.) The deed containing it, which expressly permitted the erection of a family hotel on the premises conveyed, with the usual facilities provided and necessary for the conduct of the family hotel, in the

light of present changed conditions, contemplated the use of the premises in the manner complained of, namely, for a cocktail lounge and bar. (*Isaacs* v. *Schmuck*, 245 N. Y. 77; *Kitching* v. *Brown*, 180 id. 414.) The covenant, by reason of changes in the neighborhood, some of them normal and others resulting from plaintiff's action in releasing, under its reserved right, other property from the same restriction, has become unenforcible in equity. (*Trustees of Columbia College* v. *Thacher*, 87 N. Y. 311; *Winston* v. *524 West End Avenue, Inc.*, 233 App. Div. 5; *McClure* v. *Leaycraft*, 183 N. Y. 36; *Brighton by the Sea, Inc.*, v. *Rivkin, supra.*) The plaintiff by its conduct has waived any right which it may have had to enforce the restriction in question as against defendants and their hotel premises; and is estopped from enforcing the same. It is trite that the right to a decree of specific performance rests in the discretion of a court of equity. (*Trustees of Columbia College* v. *Thacher, supra; Brighton by the Sea, Inc.*, v. *Rivkin, supra.*) The exercise of such discretion requires the denial of relief to plaintiff. Other considerations of law and fact militate against the judgment appealed from, but we consider further discussion unnecessary.

The judgment should be reversed on the law and facts, with one bill of costs, and the complaint dismissed on the law, with costs. Inconsistent findings of fact and conclusions of law should be reversed and new findings and conclusions made.

LAZANSKY, P. J.; HAGARTY and CARSWELL, JJ., concur; CLOSE, J., concurs in the result.

Judgment reversed on the law and the facts, with one bill of costs, and the complaint dismissed on the law, with costs. Findings of fact and conclusions of law inconsistent herewith are reversed and new findings and conclusions will be made.

Settle order on notice.