OSWALD R. JONES et al., Plaintiffs, *v.* CHAPEL HILL, INC., Defendant.

Supreme Court, Special Term, New York County, February 11, 1947.

786

*M. S. & I. S. Isaacs* for plaintiffs,
*George Goodstein* for defendant.

STEUER, J. Defendant is the owner of four contiguous lots consisting of Nos. 137, 139 and 141 East 71st Street and No. 986 Lexington Avenue, the whole comprising the northeast corner of Lexington Avenue and 71st Street, a plot of some 54 feet on 71st Street and about 122 feet on Lexington Avenue. Defendant acquired the 71st Street lots in 1944, and, after alterations began in January, 1945, to use No. 141 East 71st Street as an undertaking establishment with the usual adjuncts of this business. Thereafter defendant acquired the Lexington Avenue property and thereupon filed plans for the construction of a new building to be used in the undertaking business, and intends in due course to erect this building and use it for that purpose. Defendant has had the approval of all city authorities having jurisdiction of the respective matters.

Plaintiffs are separate property owners in the vicinity, their properties being located between Park and Lexington Avenues on 71st Street and 72d Street and on Lexington Avenue adjoining and opposite defendant's property. They seek to restrain defendant from continuing its business on the premises and from going ahead with its plans to erect the new building.

Plaintiffs have one ground common to all of them and two others where the asserted right belongs only to certain of them. Of the latter, the first is asserted by those whose properties are located on the south side of 72d Street. These properties and defendant's lot No. 986 Lexington Avenue were at one time all in the ownership of one Richard Williamson, who, in 1881, con-

veyed a part of them to one Charles Christy. This conveyance contains a restrictive covenant. This covenant has been maintained and appears in defendant's deed. As far as relevant, it reads the grantee " will not erect or permit upon any part of the said lot any slaughter house smith shop forge furnace steam engine brass foundry nail or other iron foundry or any manufactory of gunpowder glue varnish vitriol ink or turpentine or for the tanning dressing or preparing skins hides or leather or any brewery distillery or any other noxious or dangerous trade or business and will not erect or permit upon any part of the said lot any tenement house other than a first class tenement house.''

Having accepted the deed with the restriction, defendant is subject to it (*Vogeler* v. *Alwyn Improvement Corp.*, 247 N. Y. 131). Undertaking is not one of the occupations specifically mentioned, so the question of whether the covenant restricts defendant depends on whether undertaking is a dangerous or noxious trade within the meaning of the covenant.

Dangerous it certainly is not. Noxious is defined, " Hurtful; harmful; baneful; pernicious; injurious; destructive; unwholesome; insalubrious; * * * corrupting to morals " (Webster's New International Dictionary). The particularized definition as distinguished from its synonyms, as given by the same authority, is " harmful * * * to health of body or mind * * * ." (See Webster, under definition of " pernicious ".)

When this definition is considered in connection with the activities specifically prohibited, the thought in the mind of the conveyancer who drew the restrictive covenant becomes apparent. In stating what was sought to be restricted, he used exact language. It will be noted that all of these occupations imply either the potentiality of explosive accident or the production of odors then thought to be and described as noxious. In this category undertaking does not fall.

This subject cannot be left without consideration of the decision in *Rowland* v. *Miller* (139 N. Y. 93.) This action to restrain an undertaking establishment was decided upon a covenant (see p. 101) which prohibited any offensive and dangerous business. Even beyond the difference between " offensive " and " noxious " there are factual distinctions between the case at bar and that case. In addition to the usual incidents of undertaking, the defendant offered facilities to physicians for post-mortem operations. These facilities plus the manner in which defendant conducted its business were found to be offen-

sive. This authority does not conflict with the conclusion that the covenant herein does not affect defendant's business.

The other right referred to as being lodged in certain of plaintiffs only refers to another covenant. This covenant originated in 1866 when Sarah Mitchell, the then owner of the north side of 71st Street between Park and Lexington Avenues, conveyed a portion of this property in four separate deeds. The grantees covenanted for themselves and their successors " that in building upon the premises hereby conveyed, any building erected thereon shall set back on a line with the houses now erected in said street by said Mrs. Mitchell." The houses referred to were set back ten feet from the south boundaries of the lots. Mesne conveyances contain somewhat changed language but the meaning and intent remain the same. Two of the plaintiffs are the owners of properties within the area of the restricted grant. The easterly two of defendant's 71st Street properties are similarly within the area, and the deeds to them refer to the covenants.

Defendant contends that this setback agreement should not be enforced because neighborhood changes render its enforcement inequitable; because plaintiffs have waived the obligation; because the covenants have been merged and expired; and because no general plan of improvement is involved in the restriction.

The first objection lacks merit. The neighborhood has not changed. The lots involved in the setback agreement are residences of very much the same character as when the restriction was originally involved. It is true that business has invaded the Lexington Avenue corner and this may be a change, but not of the neighborhood. Neighborhoods in New York City end with remarkable abruptness. On the contrary, instead of change this neighborhood has been notably static. The claim of waiver is based on a release signed by one of the plaintiffs and the predecessor in title of the other, exempting the property extending east from Park Avenue for some 140 feet from the restriction of the covenant. A waiver of the right to enforce a covenant by releasing other properties from the restriction is limited to such instances where the result of the release effects such changes that it would be inequitable to enforce it (*Kew Gardens Corp.* v. *Ciro's Plaza, Inc.*, 261 App. Div. 576). That is not the situation here.

The next objection depends on these facts: The four conveyances by Sarah Mitchell previously referred to were, two of them to one Elijah C. King and the other two to one George

Young. In 1867 Young acquired King's parcels. Later Young sold the parcels and the deeds contained a covenant, similar in import to the original covenant but limited to the grantee only, and not in terms purporting to bind his heirs or assignees. The effect of such an omission is that the restriction is not perpetual, but refers to buildings then in existence or contemplated at the time of acceptance of the deed (*McLean* v. *Woolworth Co.*, 204 App. Div. 118, affd. 236 N. Y. 612). This does not release defendant, as it is quite clear that it contemplated the proposed building or something of the same nature when it acquired the deed.

Lastly, there is the objection that the restriction forms no part of a common plan. There are presently some nine houses in a row, all uniformly set back. While not great in extent, they do form a common plan. If defendant is allowed to ignore the covenant, the advantages to the easterly houses of that group will be lost. I find no reason why this covenant is not enforcible.

One ground for relief remains to be considered. All plaintiffs seek to restrict defendant from conducting its business upon the ground that it would constitute a private nuisance. Seventeen witnesses, plaintiffs or tenants or employees of plaintiffs, testified on this point and their opinion was unanimous. They objected to the defendant's business and the erection of the proposed structure. The reasons for objection varied slightly but they can be embraced in the following: (1) It would adversely affect the value of plaintiffs' properties; (2) the presence of the establishment was a constant reminder of death, which was unpleasant; (3) it would prove an increased traffic hazard. It is not intended by the order of these objections that they appeared to the witnesses as being significant in that order. The arrangement is for convenience.

The last objection is without substance legally and without support in the testimony. The proof was all to the effect that the condition of traffic in the 71st Street block, admittedly the one which would be affected, was highly congested. It was described as already constituting as much of a nuisance as such a condition is capable of producing. Any difficulty on this score will be a burden to the defendant rather than an increase in the sufferings of plaintiffs, which they describe as having already reached its limits. Furthermore, the control of traffic together with what preventive measures are necessary is peculiarly the province of the Police Department. The courts leave to this branch of the executive the solution of problems raised by traffic and do not enjoin on this account activities otherwise unobjectionable.

The other two objections can be considered together. While the adverse effect on the rental value of premises is always a factor on the question of whether an injunction will issue in a case of this character, it is not a controlling factor. It may be fairly stated that the first-stated ground of objection depends on the second, or, that the proximity of defendant's undertaking establishment will lessen the value of plaintiff's properties because of the unpleasant associations of that kind of a business. Prospective buyers will feel the same way these plaintiffs feel. Not only were these objections factually established, they are universally recognized to be common phenomena upon the appearance of a mortuary establishment (*Arthur* v. *Virkler,* 144 Misc. 483).

There have been several instances where equity has enjoined the conduct of undertaking establishments, but in every recorded instance in this State some legal ground appeared in addition to the character of the business (*Rowland* v. *Miller,* 139 N. Y. 93, *supra,* violation of a restrictive covenant; *Heimerle* v. *Village of Bronxville,* 168 Misc. 783, and *Bond* v. *Cooke,* 237 App. Div. 229, violation of a zoning ordinance; *Moore* v. *United States Cremation Co., Ltd.,* 158 Misc. 621, unlawful conduct of business by a corporation; *Bailer* v. *Ringe,* 255 App. Div. 976, unlawful use of a frame house for business; and *Arthur* v. *Virkler, supra,* exclusively residential district). In fact, the expression has been used that in and of itself the undertaking business is not a private nuisance. (See *Bailer* v. *Ringe, supra.*)

The defendant is subject to none of the afore-mentioned objections. The place where its proposed building is to be erected is currently and for a long time past has been devoted to business. It is true that at places the property immediately adjoining it is and always has been residential, but its property has been undeniably business property.

These plaintiffs are in the unfortunate position of being between two popular prejudices. As pointed out, people do not like to be reminded of death, particularly by having its trappings paraded before their homes. On the other hand, no cultural activity of which we have knowledge antedates the ceremonial disposition of the dead and there is no prospect of these practices being abandoned. It is not subject to dispute that an effort to relegate the institutions which minister to the performance of these rites to remoter and less accessible places would meet with indignant objection. The plea of the plaintiffs is not that this defendant should be barred from a business district, but only from the business district adjacent to their homes.

That it cannot be so ordered is one of the penalties of metropolitan living. As was said, " Persons living in organized communities must suffer some damage, annoyance and inconvenience from each other." (*Campbell* v. *Seaman,* 63 N. Y. 560, 577.)

Plaintiffs Jones and Shearn are entitled to enjoin defendant from building on so much of the lots restricted as projects beyond the lines of the houses erected by Sarah Mitchell. In all other respects judgment is for defendant. Submit judgment and findings accordingly.