WAUSAU THEATRES COMPANY and another, Respondents,
vs. GENRICH and others, Appellants.

*October 15—November 18, 1947.*

For the appellants there was a brief by *Genrich & Terwilliger,* attorneys, and *Emil A. Wakeen* of counsel, all of Wausau, and oral argument by *Herbert L. Terwilliger.*

For the respondents there was a brief by *Smith, Okoneski, Puchner & Tinkham* of Wausau, and oral argument by *R. E. Puchner*.

WICKHEM, J.    Block 26 of the original plat of the city of Wausau consists of eight lots running north and south.    The block is bounded on the north by Scott street and on the south by Jefferson street.    Lots 1, 2, 3, and 4 face Jefferson street, and lots 5, 6, 7, and 8 face Scott street.    Thus, lots 7 and 8 are at the north and lots 1 and 2 at the south end.    Lots 2 and 7 are to the east of lots 1 and 8.    Lots 3, 4, 5, and 6 are not involved in this litigation.    Plaintiff theatre company property consists of south portions of lots 7 and 8 and north portions of lots 1 and 2, and is so laid out as to face west on Fourth street.    For convenience, it may be designated as occupying the middle of the west half of the block.    In March, 1945, the theatre company gave plaintiff, Montgomery Plant-Post No. 10 of the American Legion an option to purchase a strip of land south of the theatre and the option was extended since the commencement of this action until a final determination of this controversy could be had.    Since the rights of plaintiff, American Legion, wholly depend upon those of plaintiff theatre company we shall make no further reference to the American Legion and simply use the word "plaintiff" to designate the theatre company.    Defendants own the south portions of lots 1 and 2 and this parcel abuts on Jefferson street on the south and Fourth street on the west.    On May 29, 1899, the parties owning these eight lots entered into an agreement that "the owners and occupants of lots 1 and 2 and 7 and 8 of said block 26 shall have perpetually and forever the right of an alley or easement ten feet wide next to and along the east line of said lots 2 and 7 extending from Jefferson street to Scott street in said city of Wausau, such easement or way to be for the use and enjoyment of the owners and occupants of said lots 1 and 2 and 7 and 8. . . ."    The result of this agreement was

to establish by mutual grants of rights of way an alley running from north to south along the east side of lots 2 and 7. There were subsequently several conveyances of the property involved, none of which are of importance here. In 1927 plaintiff desired to build a new theatre on its property. The proposed building was designed to extend across the alley and prior to building plaintiff obtained from defendants' predecessor in title a quitclaim deed to all her right, title, and interest in and to the ten-foot alley. Defendants contend that the construction of a theatre building across the alleyway destroyed the easement and constituted an abandonment of the alley with a consequent destruction of the plaintiff's easement over defendants' land. Reliance is had on *Stenz v. Mahoney,* 114 Wis. 117, 121, 89 N. W. 819, in which it was said that easements are servitudes and may be extinguished by an act of one of the parties to the easement; that the party having a right to an easement may renounce that right and that "when the act which prevents the servitude is by the party to whom the servitude is due, it is wholly extinguished. Any act wholly incompatible with the nature and exercise of the servitude is sufficient to extinguish it." Reliance is also had on *Dillman v. Hoffman,* 38 Wis. 559, 576, where it is said, "it appears very certain, upon principle and authority, that neither party could insist upon such an easement in the estate of the other, and at the same time obstruct the easement *in invitum* on his own estate." See also *S. S. Kresge Co. v. Garrick Realty Co.* 209 Wis. 305, 245 N. W. 118, 85 A. L. R. 283, to the effect that a servitude may be extinguished by renunciation of the parties entitled to it or by the act wholly incompatible with the nature and extent of the servitude.

Plaintiff contends that only the easement of defendants' predecessor was destroyed and that this destruction was by the quitclaim deed of the predecessor and not by the act of plaintiff. This contention must be sustained. If over the objection or without consent of defendants' predecessor in title, plaintiff

had built the theatre building in such a way as to block defendants' passage over the alley, the authorities above cited and on which defendants rely would doubtless require a holding that plaintiff's easement was destroyed by its own act. The difficulty with defendants' position is that it overlooks in the *Dillman Case,* above, the words *"in invitum,"* which means against the will, or over the objection of the other party. The doctrine of the cases cited is not applicable because prior to the building of the theatre defendants' predecessor in title relinquished her right of way over plaintiff's property and the subsequent building over the alley did not obstruct defendants' easement *in invitum.* The release was unilateral and neither conditioned upon nor accompanied by a release by plaintiff of the easement over defendants' property. We see no reason to suppose that the transaction had any more effect than it purports to have. It is still physically and legally possible after the quitclaim deeds for plaintiff to have a right of way over defendants' property. If the parties had intended anything different there would have been mutual releases. The theatre was built with exits fronting the alley to the south and it was evidently the expectation of the parties that that portion of the alley would continue to be used as it had always been used to secure ingress and egress to plaintiff's property. In this connection see *Wallis v. First Nat. Bank,* 155 Wis. 306, 143 N. W. 670.

Our determination of this point decides the appeal and makes it unnecessary for us to consider at length plaintiff's contention that in any case it has acquired an easement by adverse possession. This contention depends upon a claim originally made by defendants that the easements were not effectively created in 1899 or that they were revoked within a year after they were made. Except for this, plaintiff's user would be under permission of the easement and not adverse. Defendants, however, have abandoned this attack upon the easements. In view of this concession and in the light of our

conclusion that the easement was not destroyed by the quit-claim deeds in 1927 plaintiff has no need to rely upon adverse user to sustain its position.    Indeed, in this state of the record it would seem that the permissive character of the use would destroy the adverse character of the user.

*By the Court.*—Judgment affirmed.