**McCORMICK, Plaintiff, v. McCANN et al, Defendants.**

Common Pleas Court, Muskingum County.

No. 37079.   Decided April 27, 1950.

Meyer, Johnson & Kincaid, Zanesville, for plaintiff.
Porter, Stanley, Treffinger & Platt, Columbus, for defendants.

### OPINION

By CROSSLAND, J.

This case being heard on the question of whether or not to grant a temporary injunction on plaintiff's application therefor after seasonable notice to defendants and their denial of plaintiff's right thereto, the following facts are presented by the petition and upon the evidence, to-wit, plaintiff and defendant Ring Realty Company hold title to adjoining and contiguous lots, with an improvement on both consisting of two houses erected as one building of three original sections having a dividing or partitioning wall from the basement to

the attic, a part of which from front to rear is brick and balance wood or lathe and plaster, with some open area beneath the roof, with two clothes closets on the second floor adjacent to each other of which the back of one and front of the other extends beyond said dividing or partitioning wall several inches over defendant's property, with a door on the third floor rear opening through said wall into each part, rear third story dormer window partly in each half and a common roof, although the front of each such parts or portions are distinctly separate as to complete outward appearance, including separate porches and front walks thereto from sidewalk and street.

The evidence discloses that fifty-five years ago the two separately occupied parcels of real estate were owned by husbands of sisters, who, pursuant to a common plan between them, constructed the front section of said building, all of which was divided between them for separate dwelling purposes; that a line drawn through the middle of the house, front to rear, is the lot line between, and would further bisect exterior bricks front and rear; that said section of building then constructed was built with common funds with respect to the interior dividing wall and all necessary supports affixed and adjacent thereto, and that both portions were used exclusively as dwellings until late 1946 or early 1947; that plaintiff purchased the east portion of said entire building in late 1946 or early 1947, and has since used it as a doctor's office in connection with the practice of his medical profession, the attendance thereat of medical patients, and as a dwelling house until April, 1949; and finally that defendant The Dunzweiler Construction Company began dismantling and demolishing the west portion of said building after its vacation some two or three weeks prior to this suit, and after oral notice to plaintiff of its intention to do so.

Plaintiff complains that said actions of the defendants will cause great and irreparable damage and injury to plaintiff's premises and also to plaintiff in connection with the conduct of his profession therein, and that he has no adequate remedy at law.

Defendants propose to tear down and dismantle that portion of the west structure up to but not including any part of the dividing or partitioning wall, but which would expose an opening in the third story of the rear presently filled with approximately one-half of the aforesaid third story window and would likely open and expose the width and height of one said clothes closet and the entrance to said second clothes closet, and leave a generally uneven roof edge and front and rear brick wall as well as an unsightly and unfinished west

wall and a generally unsuitable and unsightly condition and appearance, although the east structure would otherwise remain presently intact.

"Though the term is sometimes used to designate a mere division wall, it has been said that, strictly speaking, a 'party wall' is one built at the joint expense of adjoining land owners and upon ground owned in common, so that each has an undivided interest in every part of the wall and the ground on which it stands." (31 O. Jur. 2, Sec. 2, with footnote reference to **Hieatt v. Morris, 10 Oh St 523.**)

"To entitle a party to an injunction his right must be clear. It is said that no rule in equity is better settled than this. Injunctions are issued to prevent injury to clear rights, and the cases which will justify interference of this kind are those of clear, incontestable, well-defined rights." (21 O. Jur. 1000-1, Sec. 13.)

What are the rights and liabilities of the respective parties in the circumstances and in the contemplation of what defendants intend?

In the case of **Brucks v. Weinig, 34 Oh Ap 1,** relied upon by plaintiff and under and upon the authority of which plaintiff's claim is largely predicated and presented, the opinion of the court of appeals of this district on page 4 states:

"Whatever may be the law outside of Ohio, it is well settled in this state, in **Hieatt v. Morris, 10 Oh St., 527,** 78 Am. Dec., 280, that 'the rights and liabilities of the parties' to a party wall agreement 'must depend upon the provisions of the contract between them **and the principles of law applicable to those provisions.'**" (Emphasis ours.)

In **Miller v. Brown, 33 Oh St 547,** the complaining party and plaintiff in the Common Pleas Court was Brown, who had a written agreement with Miller whereby unless the latter paid Brown $100, which he did not do, the east wall of the building constructed by Brown was to be his, with the further right of Brown to acquire the land under it owned by Miller by a stipulated payment, which Brown offered to make, and that accordingly Brown was entitled to damages for injury to his construction resulting from the action of Miller in eliminating four outside inches of wall foundation on Miller's land, which weakened Brown's structure by resultant settling and cracking, the court holding that:

"An owner of ground, with whose consent an adjacent proprietor occupies a portion of his premises on which to build a joint wall, can not tear away such wall after a building has been erected thereon, upon the faith of his acquiesence in its location and construction."

The opinion of Judge Wright, on page 554, recites:

"Brown spent his money upon the wall which was to be for the benefit of both; Miller saw him do it, saw him put the foundation just where he did. He can not tear it away."

In that case Miller was precluded from disadvantaging Brown, who had advantaged Miller at Brown's own expense.

The opinion of the Ohio Supreme Court in the case of William Hieatt v. Nicholas Morris, supra, is well reasoned, and of persuasive and compelling force, the syllabus of which reads in full as follows:

"The declaration set forth that T. and H., owners of adjoining lots in the city of Cincinnati in 1831, being about to build dwelling houses upon their respective lots, agreed to and did build a partition wall on the division line of their said lots for the support of their said houses, without any express stipulation as to the continuance of said partition wall, which houses continued to be occupied by them and their respective grantees for more than twenty-one years, when the grantee of H., desiring to erect upon his lot a building adapted to its increased value, notified plaintiff, grantee of T., of his intention to take down his half of said wall for the aforesaid purpose, and upon his refusal to join in or permit such removal, the defendant took down his part of the wall, using proper care to prevent injury to the part of the wall standing upon plaintiff's lot, and which, notwithstanding such care, fell down and was destroyed. Held, on general demurrer, that the facts above stated do not constitute a cause of action."

The Supreme Court in its opinion, page 427, says:

"The agreement (to construct and the actual construction of a common partition wall for the support of both houses) did not contain any **express stipulation** as to the continuance or termination of such joint use of the wall; but the plaintiff insists that it conferred upon him a right to the use of the entire wall for the support of his building for all time, or

at least, 'until the wall should become unfit for its original purpose,' and that neither party could take down his part without the consent of the other."

On page 529 the court emphasizes the absence of an **express stipulation** as to duration, saying:

"The parties made no express stipulation as to the duration of the joint use and occupancy of the partition wall, as they well might and perhaps ought to have done. Can the court now do it for them; and if so, how long is it to endure, and when is it to terminate? Must there be mutual consent, or ruinous decay of the wall, before it is taken down, or may it be terminated by either, if his interest or convenience require it?"

The court further says, same page:

"In agreeing to construct the wall, the parties probably did not look to the future, but only to the present. Their arrangement had reference to the immediate use, rather than to the future availability of their properties, or the continued use would have been matter of **express agreement,** and not left to **mere construction.**" (Emphasis by the Supreme Court.)

And the Supreme Court, in determining that plaintiff had no cause of action, further commented on page 530 of its opinion:

"And we can not but think that the defendant, after reasonable notice to the plaintiff might, under the contract, remove his portion of the wall, using due and proper care to prevent injury to the plaintiff, in order to conform his improvements to the changes which time had wrought in the value and availability of the property."

Under the heading "Change in character of locality and value of property," 85. A. L. R., 293, editorial comment in discussion of recent cases, including S. S. Kresge Company et al., v. Garrick Realty Company, 245 N. W. 118, refers to the recognized authority of Hieatt v. Morris, supra;

"In the reported case (S. S. Kresge Co. v. Garrick Realty Co. ante, 283), where the development of the locality in which the party wall was situated rendered buildings of the size and type contemplated by the agreement for a party wall wholly inadequate to produce an income commensurate with

the value of the land, the court said this change in conditions had the same effect as the destruction of the wall and buildings, viz, that it terminated the party-wall agreement, in the absence of an understanding as to the duration of the agreement. There is support for this view, also, in **Hieatt v. Morris** (1860), **10 Oh St,** 523, 78 Am. Dec. 280, where it was sustained upon the theory that it was not within the contemplation of the parties to the agreement that they, or their successors, were bound to maintain the wall in order to carry out the agreement, even though it precluded them from taking advantage of a change in conditions which rendered an appropriation of the property to other uses profitable and desirable."

The Ohio rule of the Hieatt case is recognized and not quarreled with by the 7th United States Court of Appeals in the very recent case of Carley v. Lawrence et al., 170 Federal Reporter, 2nd, 381, decided October 22, 1948, wherein, on page 383 of the opinion, specific reference is made to the Hieatt case, and, after stating the facts therein, said court, speaking of our Ohio Supreme Court, said:

"The court held that as the division wall was created by an agreement between separate grantors to the parties at bar no true party wall existed, and that the question of an existence of an easement depended upon a construction of the contract creating the wall. Finding no express stipulation as to the duration of the joint use in the contract, the court held that under the circumstances of the changed material conditions of the property, a reasonable construction of the contract was that no cause of action was stated."

It will be noted, and not without some significance, that in the instant case, plaintiff transformed part and later all of his building immediately after his purchase of it in 1946 from residence to business property, thereby indicating in his own use of property purchased by him for professional purpose and use a distinct and decided change in the former residential character of that particular neighborhood, as contrasted to its strictly residential character when the present building was constructed for two family dwelling purposes. The same present day circumstances making it no longer profitable or desirable to retain and maintain plaintiff's property for use as a dwelling reasonably accounts for the election by defendants likewise to divert their land to improvement for some other use, all in natural and logical keeping with

the progressive trend of the times and the downtown business expansion into former residential localities, no longer attractive or desirable as homes sites. That defendant's apparent plans entail some other manner of improvement than remodeling of the present structure makes their right to the use and purpose of their choice and desire of improvement no less lawful and proper than that of plaintiff. Nor was there anything in the public or private knowledge of defendant's property that purported to restrict or prevent other use. Parties purchasing real estate for investment purposes and uses should be able to depend and rely upon title examinations and existing laws to reveal whatever limitations or restrictions are asserted to prevent their free use in lawful, proper and progressive ways, whether for professional or commercial utilization and enhanced financial return, as well as in the furtherance of civic progress and community betterment.

Where plaintiff may not be entitled to damages in an action at law because he lacks a right of action, as where his petition fails to state a cause of action, then a fortiori, he is not entitled to relief in equity, and his petition for injunctive relief necessarily fails, as there is no cognizable liability of the defendant, upon the familiar doctrine of damnum absque injuria; the detriment or loss suffered being a risk inherent in the situation or transaction assumed by the complaining party, a future possibility confronting plaintiff when he elected to purchase his property at the time he did so, further than knowing that his own contemplated use of it was itself a distinct departure from the original use intended and served by the builders and first owners of the adjoining lots.

It is, however, in this case the view of this court that the harsh, even though not wrongful, results to plaintiff, while not entitling him to injunctive relief, and while within his legal contemplation, even though perhaps not actually before realized, do merit the consideration of accomodation by defendants to the extent and in the respect that plaintiff may be enabled to have access to the temporary use of defendant's land for the presence of workmen for the purpose of restoring or covering or otherwise giving such early and expeditious attention to the west wall of his building, roof, and as he may otherwise desire, consistent with defendant's property use and ownership to said present wall line and without affixing or attaching any burden upon or over defendant's land excepting only as a temporary expedient in order to avoid undue hazard, damage or distress.

A temporary injunction is disallowed, accordingly, and the existing restraining order dissolved, insofar as it presently

prevents and restrains defendants from proceeding in accordance with the announced purpose represented, to-wit, **to but not within** the existing dividing or partition wall, and with freedom of opportunity to plaintiff to arrange for and carry out, within a reasonable period of time, the corrective measures above indicated.